**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **K. KABASHA GRIFFIN-EL** | : | **CIVIL ACTION** |
| **a/k/a KEITH FEDELE GRIFFIN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **JEFFREY A. BEARD, et al.,** | : | **NO.  06-2719** |
| **Defendants.** | : | |

**MEMORANDUM AND OPINION**

L. FELIPE RESTREPO                                    JUNE 8, 2009
UNITED STATES MAGISTRATE JUDGE

Before the Court is the declaration of Jeffrey A. Beard, Ph.D., Secretary of the

Pennsylvania Department of Corrections ("DOC") asserting that the deliberative process

privilege applies to certain psychological, psychiatric, counseling or mental health records

(hereinafter "mental health records") of the Plaintiff, K. Kabasha Griffin-El (Doc. No. 79).  Also

before the Court is Defendants' letter brief explaining the legal basis for their assertion that

Plaintiff's mental health records are protected by the deliberative process privilege (Doc. No. 86)

and Plaintiff's letter brief in opposition thereto (Doc. No. 85).  The mental health records at issue

have been provided to the Court for *in camera* review.  For the reasons which follow, the Court

will require production of the mental health records which are responsive to Plaintiff's first

request for documents.  Production of the documents must conform to the Court's corresponding

protective order.

### 1. Background

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that various employees of the DOC violated his First Amendment right to access the courts, his Fourteenth Amendment right to due process of law, his Fourth Amendment right to be free from unreasonable searches, and that Defendants retaliated against him for asserting his First Amendment rights.  See Second Amended Comp. ¶¶ 81-105.  Plaintiff also seeks a declaratory judgment.  Id. ¶¶ 1, 81-83.  These constitutional violations allegedly occurred as a result of two searches of Plaintiff's prison cell while he was incarcerated at the State Correctional Facility at Graterford ("SCI-Graterford").  See Id. ¶¶ 1, 2-105.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a "civil action[] arising under the Constitution, laws, or treaties of the United States."  See 28 U.S.C. § 1331.

On February 10, 2009, the Court held a conference call with counsel for both parties in order to resolve a number of discovery disputes.  The Court then issued an order (Doc. No. 68) requiring Defendants to produce the documents requested in Plaintiff's first request for documents.  See Order dated 2/10/09 ¶ 8 (Doc. No. 68).  Defendants filed a Motion for Reconsideration, arguing that they should not be required to produce Plaintiff's mental health records because they are privileged and present concerns regarding confidentiality and security in the prisons.  See Def.'s Mot. for Recons. ¶¶ 3-8.  Defendants also asserted objections that the documents were irrelevant and that the request was unduly burdensome.  Id.  The Court issued an Order denying Defendants' Motion for Reconsideration and again ordering production of the documents.  See Order dated 3/16/09 ¶ 1 (Doc. No. 76).

Defendants' Motion for Reconsideration was denied because they failed to raise

appropriate grounds for reconsideration, did not follow the firmly established procedures

required of executive agencies when asserting claims of privilege, and because the Court had

previously rejected their boilerplate claims of irrelevance and undue burden and was presented

with no evidence or reason to disturb that ruling.[1]  See Griffin-El v. Beard, 2009 U.S. Dist.

LEXIS 20651, at *1-34 (E.D. Pa. Mar. 16, 2009).  The Court examined the procedures which

executive agencies must follow when withholding documents on the basis of privilege in some

detail.  Indeed, it was noted that Defendants should have submitted an affidavit prepared by the

head of the DOC indicating that he or she had personally reviewed the contested documents and

asserting the specific basis for the privilege as it allegedly applied to each document.  Id. at *13-

25 (citations omitted).  Defendants were additionally ordered to produce a privilege log, submit

the contested documents for *in camera* inspection, and to "set forth the precise factual and legal

arguments which they believe support the application of privilege to each document."  Id. *21-22

n. 2, 25 (citations omitted); see also Order dated 3/16/09 ¶¶ 1-2.

        Defendants responded by submitting the declaration of Secretary Beard indicating that he

had reviewed Plaintiff's mental health records.  See Beard Decl. ¶¶ 12-13.  Secretary Beard

indicated that Plaintiff's mental health records "contain entries and narratives covering mental

status, reasoning capacity, emotional state, social adaptability, judgment ability, and the results of

clinical tests," and explained that "[i]f the files were readily available to inmates or the public,

these professionals would tend to refrain from entering candid opinions and evaluations . . . [and]

[c]onsequently, decision-makers would not have the benefit of honest observations from

_____

        [1]The Court also noted that the Motion was deficient under Local Rule of Civil Procedure
7.1(c) due to Defendants' failure to file a brief with supporting legal authority.  Griffin-El, 2009
U.S. Dist. LEXIS 20651, at *8-10 (citations omitted).

professionals in the field." Id. ¶ 16.  He further noted that disclosure of these records would make inmates "capable of manipulating the resulting diagnosis," which would be a detriment to his treatment, could lead to "improper institutional placement" which could result in him being placed somewhere "where he is a danger to others," and that it could even lead to an erroneous early parole release which would endanger "the community at large." Id. ¶ 17.

With respect to the counseling records specifically, Secretary Beard asserts that they "contain entries and narratives covering such things as Plaintiff's behavior, attitude, adjustment, and emotional state" and that "[i]f the files were readily available to inmates or the public, Department staff would tend to refrain from entering candid opinions, evaluations, and observations." Id. ¶ 20.  He explains that "if specific information within the counselor's files were routinely made available to inmates, it would be detrimental to the treatment and the safety of the inmates, the safety of the staff, and the security and order of the institution and would significantly increase the difficulty of prison administration and hinder inmate treatment" and would "unnecessarily chill[] the free and uninhibited exchange of ideas between staff, discouraging confidential sources of information, and unjustifiably compromise the confidentiality of system records as well as the counselor-inmate relationship itself." Id. ¶¶ 21-22.  Secretary Beard also notes that disclosure of these records could also place the "public at risk." Id. ¶ 23.  As a result, Secretary Beard "invok[es] the Executive Documents/Deliberative Process Privilege permitting the government to withhold the documents described in [his] Declaration." Id. ¶ 34.

Defendants did not supplement Secretary Beard's declaration with any brief or memorandum of law setting forth legal arguments supporting his assertion of the privilege with

respect to each relevant document.  The declaration sets forth a number of types or categories of documents which they deem privileged.  Id. ¶¶ 12-13.  Because the Court had previously ordered Defendants to set forth the legal basis for their privilege claims, Defendants were ordered to submit a letter brief to the Court containing legal support for their position in enough detail to enable Plaintiff to respond while still maintaining the privilege.  See Order dated 4/7/09 ¶ 5 (Doc. No. 81).  Plaintiff was ordered to submit a letter brief in response.  Id. ¶ 6.

## 2. DISCUSSION

Defendants essentially assert two claims in their efforts to withhold production of Plaintiff's mental health records.  First, they allege that the documents are protected by the deliberative process privilege; and second, they allege that the Court should recognize state law as creating a privilege under the federal common law.  See Def.'s Letter Mem. 1-2.  In the event the Court denies their privilege claims, Defendants urge the Court to craft a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.  Id. at 3.  Defendants have not convinced the Court that the deliberative process privilege justifies withholding the documents, and the Court does not find that any state law of privilege should be recognized by the federal common law under these circumstances.  As such, Plaintiff's mental health records must be produced.  However, because the Court finds that these documents are highly sensitive, a protective order is necessary to delineate specific guidelines for the manner under which they are disclosed.

## A.  DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROVING THE DELIBERATIVE PROCESS PRIVILEGE WARRANTS NONDISCLOSURE OF THE DOCUMENTS

As a general matter, the Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Since Plaintiff has brought federal claims, Rule 501 of the Federal Rules of Evidence dictates that "the privileges in this case are governed by 'principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'"  Startzell v. City of Philadelphia, 2006 U.S. Dist. LEXIS 74579, at *6 (E.D. Pa. Oct. 13, 2006) (quoting United States v. O'Neill, 619 F.2d 222, 230 (3d Cir. 1980)); see O'Neill, 619 F.2d at 230 (quoting Fed. R. Evid. 501).  The Third Circuit has explained that "the deliberative process privilege, like other executive privileges, should be narrowly construed."  Redland Soccer Club, Inc. v. Dep't of the Army of the United States, 55 F.3d 827, 856 (3d Cir. 1995) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980)) (additional citations omitted).  Other courts have noted that "in a civil rights action involving asserted official misconduct a claim that relevant evidence is privileged 'must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'"  Crawford v. Dominic, 469 F. Supp. 260, 262 (E.D. Pa. 1979) (quoting Wood v. Breier, 54 F.R.D. 7, 13 (E.D. Wis. 1972)).

When successfully asserted, "[t]he deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations, or advice.'"  Redland Soccer Club, 55 F.3d at 853 (quoting In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987)) (additional citations omitted).  The purpose of the

6

deliberative process privilege "is to prevent injury to the quality of agency decisions." Redland Soccer Club, 55 F.3d at 854 (quoting NLRB. v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)). Factual information does not receive protection, "even if such information is contained in an otherwise protectable document, as long as the information is severable." Redland Soccer Club, 55 F.3d at 854 (citing In re Grand Jury, 821 F.2d at 959). Further, any "[c]ommunications made subsequent to an agency decision" are not protected. Redland Soccer Club, 55 F.3ds at 854 (quoting United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993)).

The government agency has the burden of proving the applicability of the deliberative process privilege. Redland Soccer Club, 55 F.3d at 854 (citing Schreiber v. Soc'y for Sav. Bancorp., 11 F.3d 217, 221 (D.C. Cir. 1993)). In order to meet their burden, the government "must present more than a bare conclusion or statement that the documents sought are privileged." Redland Soccer Club, 55 F.3d at 854 (citing Schreiber, 11 F.3d at 221). "Otherwise, the agency, not the court, would have the power to determine the availability of the privilege." Redland Soccer Club, 55 F.3d at 854 (citing Schreiber, 11 F.3d at 221). The agency head is required to personally review the documents, provide "a specific designation and description of the documents claimed to be privileged," and must provide "precise and certain reasons for preserving the confidentiality of the communication;" additionally, the claims are "[u]sually . . . raised by affidavit." Startzell, 2006 U.S. Dist. LEXIS 74579, at *8 n. 5 (quoting O'Neill, 619 F.2d at 226); see also Griffin-El, 2009 U.S. Dist. LEXIS 20651, at *13-16 (citations omitted). Further, submission of the documents for *in camera* inspection is often appropriate. See Griffin-El, 2009 U.S. Dist. LEXIS 20651, at *17-18 (citing Kerr v. U.S. Dist. Ct. for the N.D. of Cal., 426 U.S. 394, 405 (1976)). Defendants have complied with these procedures after

7

receiving specific direction from the Court on more than one occasion.

### (1) WHETHER THE DOCUMENTS ARE PREDECISIONAL AND DELIBERATIVE

"To determine if the privilege applies, courts in the Third Circuit apply a two-part test: (1) determine whether the communications are privileged and (2) balance the parties' interests." Startzell, 2006 U.S. Dist. LEXIS 74579, at *8 (citing Redland Soccer Club, 55 F.3d at 854). At the first step, the "party asserting the privilege must show the information sought is pred[e]cisional and deliberative." Startzell, 2006 U.S. Dist. LEXIS 74579, at *9 (citing Cipolla v. County of Rensselaer, 2001 U.S. Dist. LEXIS 16150, at *7 (N.D.N.Y. Oct. 10, 2001)). "Specificity of description is necessary to enable the Court to comply with its duty of insuring that the privilege is invoked as narrowly as possible consistent with its objectives." Resident Advisory Bd. v. Rizzo, 97 F.R.D. 749, 753 (E.D. Pa. 1983).

"The information is predecisional if it reflects the steps that lead to the agency's final decision." Startzell, 2006 U.S. Dist. LEXIS 74579, at *9 (citing Cipolla, 2001 U.S. Dist. LEXIS 16150, at *7). To prove that the documents are predecisional, "the agency need not identify the specific policy decision related to the document." Cozen O'Connor v. United States Dep't of Treasury, 570 F. Supp. 2d 749, 779-80 (E.D. Pa. 2008) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153 n. 18 (1975)) (examining the application of the deliberative process privilege under Exemption 5 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5));[2] see

---

[2]Courts have explained that "[t]here are 'no functional differences in the applicable principles for an analysis of the [deliberative process] privilege under the [FOIA] or the federal common law.'" Harris v. City of Philadelphia, 1995 U.S. Dist. LEXIS 7908, at *16 n. 7 (E.D. Pa. June 6, 1995) (third alteration in original) (quoting United States v. Real Property, 142 F.R.D. 431, 434 (W.D. Pa. 1992)).

Gaskin v. Commonwealth of Pennsylvania, 1997 WL 734031, at *1 n. 2 (E.D. Pa. Nov. 4, 1997) (quoting Manna v. United States Dep't of Justice, 815 F. Supp. 798, 815 (D.N.J. 1993)) (the agency need not identify a particular decision, rather it must "merely establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process'"); see also Manna, 815 F. Supp. at 815 (quoting Coastal States, 617 F.2d at 868). Indeed, the Supreme Court of the United States has cautioned that a specific decision need not be tied to the documents by the government, because "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." Sears, Roebuck & Co., 421 U.S. at 153 n. 18.

The information "is deliberative if it reflects the process the agency used to reach the decision." Startzell, 2006 U.S. Dist. LEXIS 74579, at *9 (citing Cipolla, 2001 U.S. Dist. LEXIS 16150, at *7). "The material to be protected must reflect the 'give and take' of the consultative process, the personal opinions of the agency members in the course of policy formulation rather than the policy of the agency itself." Rizzo, 97 F.R.D. at 753 (citing Coastal States, 617 F.2d at 866). "The deliberative process privilege goes to conceptualizing and not to the gathering of facts." Cozen O'Connor, 570 F. Supp. 2d at 780. "However, when factual material exposes the deliberative process," the agency can invoke the privilege "unless the agency can redact the exempt material without revealing the thought process." Id. (citing Wolfe v. Dep't of Health and Human Serv., 839 F.2d 768, 774 (D.C. Cir. 1988)). Some courts have extended the deliberative process privilege to "recommendations, draft documents, proposals, suggestions, and other

9

subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Gaskin, 1997 WL 734031, at *1 n. 2 (quoting Manna, 815 F. Supp. at 815) (additional citation omitted).

With respect to whether Defendants have carried their burden of proving the documents are predecisional, Defendants identify two potential types of decisions that may be made as a result of the contents of an inmate's mental health records.  Secretary Beard noted in his declaration that the opinions of mental health professionals located in inmate mental health records, if inaccurate, could cause the DOC to place the Defendant in housing where he could be a danger to others.  Beard Decl. ¶ 17.  Additionally, Secretary Beard notes that inaccurate mental health records could cause an inmate to be prematurely paroled.  Id.  Secretary Beard also notes that decision-makers need to "have the benefit of honest observations from professionals in the field."  Id. ¶ 20.

Plaintiff's first request for documents is the mechanism through which he seeks production of his mental health records.  In his first request for documents, Plaintiff specifically seeks:

> All files or records kept by the Prison concerning Plaintiff, including, but not limited to, documents concerning his incarceration at the Prison, inmate status, jobs, education, courses, medical records, psychological records, psychiatric records, counseling records, and/or disciplinary records.

Griffin-El, 2009 U.S. Dist. LEXIS 20651, at *3-4 (citation omitted).  In the request for documents, Plaintiff defines "Prison" to mean "the State Correctional Institute at Graterford, Pennsylvania, and all of its directors, officers, employees, agents, and servants."  Id. at *26 (citation omitted).  As a result, the Court previously interpreted the first request for documents to

10

be limited to documents generated while Plaintiff was incarcerated at SCI-Graterford and specifically excepted documents generated at SCI-Houtzdale and SCI-Greensburg.  Id.  The documents submitted to the Court as "Exhibit A" and "Exhibit B" for *in camera* review contain documents generated at SCI-Houtzdale and SCI-Greensburg.  Beard Decl. ¶ 14.  Secretary Beard has explained that "[i]f the inmate is transferred to another state correctional institution, his files accompany him."  Id.  However, the Court sees no reason to disturb our prior interpretation of Plaintiff's first request for documents.  Accordingly, the Court finds that any documents that Defendants have submitted to the Court that were generated at SCI-Houtzdale or SCI-Greensburg are outside the scope of Plaintiff's first request for documents and their production will not be required here.

The remaining documents submitted to the Court as "Exhibit A" which were generated at SCI-Graterford (and are responsive to Plaintiff's request) can be classified as progress notes, mental health referral forms, mental health contact notes, and individual treatment plans.  Here, the Court notes that Defendants do not point to any specific parole determination or inmate housing decision that these generic mental health records relate to.  Incidentally, Plaintiff is currently serving a life sentence without the possibility of parole, so there is no chance that these documents will play a part in any later parole decision which could endanger the public at large.  See Def.'s Mot. Dismiss Ex. 4 (Doc. No. 52-3).  However, Secretary Beard notes that these documents "can lead to improper institutional placement" where the inmate could endanger others.  Beard Decl. ¶ 17.

Plaintiff argues that "there is nothing in the Beard Declaration to support a specific finding that Plaintiff's specific records were used for anything other than evaluating Plaintiff."

Pl.'s Letter Mem. 2.  Plaintiff cites Scott v. Bd. of Educ. of City of East Orange, 219 F.R.D. 333, 337 (D.N.J. 2004) to support the proposition that the deliberative process privilege only applies to "policy formulation at the higher levels of government," and that "[r]outine operating decisions cannot be transformed into policy formulation at the higher levels of government simply because they are made at public institutions."  Pl.'s Letter Mem. 2 (quoting Scott, 219 F.R.D. at 337) (emphasis omitted) (internal citations omitted).  However, other Courts have "applied the deliberative process privilege to protect materials that concern individualized decisionmaking, rather than the development of generally applicable policy."  Hinckley v. United States, 140 F.3d 277, 284 (D.C. Cir. 1998) (citing Mapother v. Dep't of Justice, 3 F.3d 1533, 1535 (D.C. Cir. 1993)).[3]  In Hinckley, the D.C. Circuit considered the applicability of the deliberative process privilege in the context of "[d]eliberations about whether to allow [mental health patients] back into the community," and found the deliberations privileged because of the safety concerns that the Review Board members may face if "their internal deliberations were released to the insanity acquittee."  Hinckley, 140 F.3d at 285.

Hinckley is distinguishable to the extent that there is no specific decision tied to the documents at issue in Exhibit A.  Therefore, the predecisional nature of the documents is tenuous.  Additionally, to the extent that these documents might relate to a time after Plaintiff was moved to a different housing unit, such documents would not be predecisional.  See Redland

---

[3]The Court notes that we accord case law from the U.S. Court of Appeals for the District of Columbia Circuit quite a bit of persuasive force due to the frequency with which courts in the Third Circuit have cited and relied upon it where the government seeks to withhold documents pursuant to the deliberative process privilege.  See, e.g., Redland Soccer Club, 55 F.3d at 856 (quoting Coastal States, 617 F.2d at 868); see also Cozen O'Connor, 570 F. Supp. 2d at 780 (citing Wolfe, 839 F.2d at 774).

Soccer Club, 55 F.3ds at 854 (quoting Farley, 11 F.3d at 1389) (any "[c]ommunications made subsequent to the agency decision" are not protected.).  Furthermore, by its very terms, the deliberative process privilege is defined as applying to "confidential deliberations of law or policymaking, reflecting opinions, recommendations, or advice."  Redland Soccer Club, 55 F.3d at 853 (quoting In re Grand Jury, 821 F.2d at 959) (additional citations omitted).  Inmate housing decisions and parole decisions do not involve lawmaking or policy formulation.  However, given the fact that documents need not be tied to specific policy decision, combined with the fact that there is conflicting case law as to whether individualized decisions fall under the privilege, the Court finds that the documents in Exhibit A are arguably predecisional as they apply to theoretical changes to an inmate's housing status or potential parole decisions.  See Cozen O'Connor, 570 F. Supp. 2d at 779-80 (citing NLRB, 421 U.S. at 153 n. 18); see also Scott, 219 F.R.D. at 337 (citations omitted); Hinckley, 140 F.3d at 284 (citation omitted).

However, the documents contained in Exhibit A are not deliberative in nature.  They do not reflect agency "give and take" or the processes that the DOC uses to make decisions.  See Startzell, 2006 U.S. Dist. LEXIS 74579, at *9 (citing Cipolla, 2001 U.S. Dist. LEXIS 16150, at *7); see also Rizzo, 97 F.R.D. at 753 (citing Coastal States, 617 F.2d at 866).  For instance, there is no indication how Plaintiff's treatment notes and updates will factor into a decision for parole or institutional placement.  The contents of the documents do not reveal the weight these records are given in those decision making processes, who considers them, and the Court notes that they contain a great deal of factual material, which is discoverable in its own right if it can be severed from privileged documents.  See Redland Soccer Club, 55 F.3d at 854 (citing In re Grand Jury, 821 F.2d at 959); see also Carter v. City of Philadelphia, 2000 U.S. Dist. LEXIS 6658, at *3-4, 8-

13

10 (E.D. Pa. May 5, 2000) (finding that documents generated by the Philadelphia Police Department and Philadelphia District Attorney's Office in an underlying criminal case were not protected by the deliberative process privilege in a subsequent civil rights suit challenging "the handling of the criminal case" because the documents were specific to the plaintiff and did "not reveal any broad pronouncements by the D.A.'s office that would tend to show how that office's decisions are made or its policies are formulated.").

It is not disputed that an inmate's mental health records might be reviewed by subsequent decision-makers, but if they do not indicate how those decisions are made or reveal the process the DOC utilizes to make the decisions, they are not protected by the deliberative process privilege.  To find that the mental health records in Exhibit A are protected by the privilege in this case would paint with too broad a brush.  However, we note that today's decision is limited to the application of the deliberative process privilege to the facts of this case.  We make no finding as to the applicability of the privilege to inmate mental health records generated and maintained by the DOC in other cases or under other factual circumstances.

The documents contained in "Exhibit B" which were submitted to the Court for *in camera* review, can be classified as follows:[4] a PADOC Differential AOD TC Selection Scoring Form, vote sheets from SCI-Graterford, and an e-mail between DOC professionals.  With respect to the PADOC Differential AOD TC Selection Scoring Form, utilizing the analysis from above, this document is arguably predecisional in that it appears to be related to DOC decisions to either place the inmate or to place them in particular programs.  However, the document contains

---

[4]Documents that were generated at SCI-Houtzdale and SCI-Greensburg are omitted from this list because they are non-responsive to Plaintiff's first request for documents and need not be produced.

14

purely factual information and therefore it is not protected by the privilege.  See Redland Soccer Club, 55 F.3d at 854 (citing In re Grand Jury, 821 F.2d at 959).

With regard to the vote sheets from SCI-Graterford and the internal e-mail between DOC staff, the Court finds after conducting our independent *in camera* review that the predecisional and deliberative nature of these documents is manifest.  These documents clearly tie to an actual decision, albeit an individualized decision, which was being considered by the DOC, and the documents clearly reflect the give and take of the decision making process and collaboration amongst DOC personnel to reach that decision.  See Startzell, 2006 U.S. Dist. LEXIS 74579, at *9 (citing Cipolla, 2001 U.S. Dist. LEXIS 16150, at *7); see also Rizzo, 97 F.R.D. at 753 (citing Coastal States, 617 F.2d at 866); Hinckley, 140 F.3d at 284 (citation omitted).  As such, the deliberative process privilege applies to the vote sheets from SCI-Graterford and the internal DOC e-mail.

### (2) Plaintiff's Need for the Documents Overcomes the Privilege

The Court has found that the deliberative process applies to some of the documents at issue in this dispute.  However, even assuming *arguendo* that the privilege applies to all the documents, it is not absolute.  Redlands Soccer Club, 55 F.3d at 854 (citing First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 n. 5 (D.C. Cir. 1994)).  Once the Court determines that the deliberative process privilege applies, the Court is required at step two to "balance the parties' interests," because "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case . . . or by making a *prima facie* showing of misconduct."  Redlands Soccer Club, 55 F.3d at 854 (quoting

In re Grand Jury, 821 F.2d at 959).  The Third Circuit has elucidated the appropriate balancing

test, which has been adopted from the case law of the D.C. Circuit, to require balancing of "at

least the following factors: '(i) the relevance of the evidence sought to be protected; (ii) the

availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv)

the role of the government in the litigation; [and] (v) the possibility of future timidity by

government employees who will be forced to recognize that their secrets are violable.'"

Redlands Soccer Club, 55 F.3d at 854 (alteration in original) (quoting First Eastern Corp., 21

F.3d at 468 n. 5).

        The first factor weighs in favor of the Plaintiff because this Court has already determined

that Plaintiff's mental health records have the potential to be highly relevant.  See Redlands

Soccer Club, 55 F.3d at 854 (quoting First Eastern Corp., 21 F.3d at 468 n. 5); see also Griffin-

El, 2009 U.S. Dist. LEXIS 20651, at *24-25, *29.  The second factor, the availability of other

evidence, is neutral.  Redlands Soccer Club, 55 F.3d at 854 (quoting First Eastern Corp., 21 F.3d

at 468 n. 5).  While counsel will depose two of the mental health professionals who treated

plaintiff at SCI-Graterford, see Order dated 5/13/09 ¶ 4 (Doc. No. 92), Defendants have not made

any showing that the evidence contained in Plaintiff's mental health records is available

elsewhere.  Further, Plaintiff's counsel has indicated a need to review the mental health records

as a basis for the questions they will pose in the aforementioned depositions.

        The third factor, the seriousness of the litigation and the issues involved, weighs in favor

of the Plaintiff.  Redlands Soccer Club, 55 F.3d at 854 (quoting First Eastern Corp., 21 F.3d at

468 n. 5).  The Court notes at the outset that this particular case does not present any novel legal

issues.  However, Plaintiff has raised constitutional challenges to some of the deliberative

processes of the DOC personnel themselves.  <u>See</u> Pl.'s Letter Mem. 3; <u>see also</u> Second Am.

Compl. ¶¶ 88-91 (alleging that Defendants retaliated against Plaintiff for exercising his First

Amendment rights).  In this regard, many Courts have held that "when the deliberations of a

government agency are at issue, the Privilege is not available to bar disclosure of such

deliberations." <u>Scott</u>, 219 F.R.D. at 337; <u>see also</u> <u>In Re Subpoena Duces Tecum Served on the</u>

<u>Office of the Comptroller of the Currency</u>, 145 F.3d 1422, 1424 (D.C. Cir. 1998) (explaining that

where "plaintiff's cause of action is directed at the government's intent . . . it makes no sense to

permit the government to use the privilege as a shield" and that where "Congress creates a cause

of action that deliberatively exposes government decisionmaking to the light, the privilege's

raison d'etre evaporates.").

Additionally, the fact that this is a civil rights case is a non-dispositive factor which is

considered in the balancing of the parties' interests.  <u>Startzell</u>, 2006 U.S. Dist. LEXIS 74579, at

*13 (citing <u>Cipolla</u>, 2001 U.S. Dist. LEXIS 16150); <u>Tumas v. Bd. of Educ. of Lyons Township</u>

<u>High Sch. Dist. No. 204</u>, 2007 U.S. Dist. LEXIS 56242, at *21-22 (N.D. Ill. July 31, 2007)

(citations omitted) (finding "the fact that [the plaintiff] allege[d] discrimination and civil rights

violations d[id] not automatically trump the [agency's] interest in protecting the information" and

that "while th[e] factor [was] implicated, it only negligibly support[ed] [p]laintiff.").  Other

Courts have gone so far as to find that "in a civil rights action where the deliberative process of

State or local officials is itself genuinely in dispute, privileges designed to shield that process

from public scrutiny must yield to the overriding public policies expressed in the civil rights

laws." <u>Scott</u>, 219 F.R.D. at 337 (quoting <u>Grossman v. Schwarz</u>, 125 F.R.D. 376, 381 (S.D.N.Y.

1989)) (additional citations omitted).  This case is not only a civil rights case, but the deliberative

process of Defendants has been challenged on constitutional grounds and is thus at the heart of

the dispute.  Therefore, this factor weighs in favor of Plaintiff.

      The fourth factor, the role of the government in the litigation, weighs marginally in favor

of the Plaintiff.  Redlands Soccer Club, 55 F.3d at 854 (quoting First Eastern Corp., 21 F.3d at

468 n. 5).  In certain cases, the government agency's limited involvement in the underlying

conduct has supported a successful assertion of the deliberative process privilege.  Startzell, 2006

U.S. Dist. LEXIS 74579, at *12 (finding that where the District Attorney's office was not a

defendant and had a limited role in the "events underlying th[e] suit," the documents were

protected by the deliberative process privilege and were not "directly relevant to [the]

[p]laintiffs' claims"); see also Walker v. NCNB Nat'l Bank of Florida, 810 F. Supp. 11, 12, 14

(D.D.C. 1993) (finding in an employment discrimination suit that testimony about a "reasonable

cause" letter sought from an employee of the Equal Employment Opportunity Commission

("EEOC") was protected by the deliberative process privilege partly because of the limited role

of the EEOC in the litigation).  In other instances, courts have held that "[w]hen the government

seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that

a private plaintiff would have to turn over."  EEOC v. Airborne Express, 1999 U.S. Dist. LEXIS

1751, at *4 (E.D. Pa. Feb. 23, 1999) (quoting EEOC v. Citizens Bank & Trust Co., 117 F.R.D.

366 (D. Md. 1987)) (additional citations omitted).

      The case at bar implicates different concerns.  Here, the DOC is not seeking affirmative

relief, nor is the DOC a party to this case.  Beard Decl. ¶ 9.  However, the DOC "is supplying the

resources for [Defendants'] defense, and, absent any bad faith, will indemnify them in this

action."  Id.  Moreover, Secretary Beard is the agency head who has submitted an affidavit

asserting the privilege on behalf of the DOC, and he is a Defendant in this action.  Therefore,

while it is the individual DOC employees' conduct that has been challenged on constitutional

grounds, the DOC does have an interest in the outcome of this litigation even as a non-party.

The fifth factor, "the possibility of future timidity by government employees," weighs in

favor of Defendants.  Redlands Soccer Club, 55 F.3d at 854 (quoting First Eastern Corp., 21 F.3d

at 468 n. 5).  Indeed, the Supreme Court of the United States has stated that where information

regarding a prison inmate is the subject of an asserted governmental privilege, there are

legitimate concerns that disclosure of these materials would "chill[] the free and uninhibited

exchange of ideas between staff members within the system, by causing the unwarranted

disclosure and consequent drying up of confidential sources, and in general by unjustifiably

compromising the confidentiality of the system's records and personnel files."  Kerr, 426 U.S. at

405 (citation omitted).  Here, Secretary Beard has set forth the concerns of the DOC in great

detail.  See Beard Decl. ¶¶ 16-17, 20-24.  In addition to explaining how allowing an inmate to

review his own mental health records could result in manipulation, Secretary Beard has noted

that the DOC "must always be aware of the fact that at-risk individuals may resort to violence

against our professional staff in response to reviewing inmate records and either

misunderstanding or disagreeing with the evaluations and record comments," which describes the

DOC's fears of relation against its staff.  Beard Decl. ¶¶ 17-18, 21-22.

The Court has no doubt that these fears are legitimate and genuine.  It is noted, however,

that Defendants' concerns that "inaccurate information may cause [inmates] to be prematurely

released from custody, e.g., to be paroled," see Beard Decl. ¶ 17, are undermined by the fact that

Plaintiff is serving a life sentence without the possibility for parole.  Thus, there is no danger that

production of Plaintiff's mental health records in this case will risk that he will receive

unjustified early parole.  Furthermore, Secretary Beard's concerns that inmates might retaliate

against DOC staff if they are permitted to view their comments in mental health records is

somewhat weakened by the fact that Plaintiff is no longer being housed at SCI-Graterford.

Therefore, the risk that he will retaliate against the particular mental health professionals that

generated the documents at issue is essentially nonexistent absent a transfer back to SCI-

Graterford.

      After weighing all the factors, the Court finds that even if the deliberative process

privilege applied to all of the contested documents, Plaintiff has overcome Defendants' claims

that his mental health records from SCI-Graterford are protected by the privilege.  To find that

the privilege applies under these facts, where the deliberative process itself is at the heart of

Plaintiff's civil rights claims, could to some degree eviscerate or impair Plaintiff's ability to

prosecute his claims.

### B.  THE STATE LAW THAT DEFENDANTS RELY UPON SHOULD NOT BE RECOGNIZED AS A FEDERAL PRIVILEGE

      Defendants also urge the Court to "consider that the psychological and psychiatric records

at issue are privileged under state law."  Def.'s Letter Mem. 2 (citing Pearson v. Miller, 211 F.3d

57, 61 (3d Cir. 2000)).  Plaintiff argues that the state laws cited by Defendants deal with

confidentiality rather than privileges.  Pl.'s Letter Mem. 5.

      In Pearson, the Third Circuit addressed a litigant's argument that "as a matter of federal

law, the concerns captured by the Commonwealth's confidentiality statutes ought to be reflected

in federal recognition of an evidentiary privilege that would allow appellants to properly resist all, or nearly all, of the discovery attempted by appellee." Pearson, 211 F.3d at 65.  There, the Third Circuit explained that "federal courts are to assess the appropriateness of new privileges as they arise in particular cases, but they are to conduct that assessment with a recognition that only the most compelling candidates will overcome the law's weighty dependence on the availability of relevant evidence." Id. at 67.

"A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." Id. (quoting United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)) (additional citation omitted).  However, "[t]he appropriateness of deference to a state's law of privilege is diminished . . . in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege" because "[t]here is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." Id. at 68 (quoting ACLU v. Finch, 638 F.2d 1336, 1344 (5th Cir. 1981)); see also Pearson, 211 F.3d at 68 (quoting Longenbach v. McGonigle, 750 F. Supp. 178, 180-81 (E.D. Pa. 1990)) ("Nor does it make any sense to allow the state, under whose color of authority officers have allegedly violated rights, to limit unilaterally the availability of evidence.").

The first statute in question in Pearson was Pennsylvania's Child Protective Services Law, 23 Pa.C.S.A. § 6301 et seq., which "mandates that the confidentiality of reports of child abuse made pursuant to that law be preserved." Pearson, 211 F.3d at 62.  The second statute at issue was the Juvenile Act, 42 Pa.C.S.A. § 6501 et seq., which "restricts access to 'files and

records of the court' related to proceedings under the Act," and requires that "[s]uch files are to be kept confidential, except that certain persons, including parties 'and their counsel and representatives' are permitted to view the documents contained therein."  Id. at 63.  Further, the Juvenile Act requires that the names of "confidential sources of information" be kept confidential.  Id. (quoting 42 Pa.C.S.A. § 6307(2)); see also 42 Pa.C.S.A. § 6307(a)(2) (2006).  The third statute in question was the Mental Health Procedures Act, 50 Pa.C.S.A. § 7101 et seq., which requires that "all documents concerning persons in treatment shall be kept confidential."  Pearson, 211 F.3d at 63 (quoting 50 Pa.C.S.A. § 7111(a)).

The Third Circuit in Pearson found that "it is not clear that the [Pennsylvania] statutes in question create evidentiary privileges at all."  Pearson, 211 F.3d at 68.  This was partly due to the fact that only one of the three statutes even "contain[ed] the word 'privilege.'"  Id. at 68, 68 n.11.  However, it was noted that "[i]t does not follow, however, that a statute providing for a duty of confidentiality--but lacking an express provision for an evidentiary privilege, per se--could not also be interpreted as creating such a privilege."  Id. at 68.  The Third Circuit further articulated that with respect to the statutes in question in Pearson:

> To be sure, what these [state court] opinions have characterized as "privileges" are not necessarily privileges within the meaning of Rule 501.  It is clear, however, that the Commonwealth does recognize a series of rights, variously defined, to withhold relevant evidence from judicial proceedings on the basis of the confidentiality provisions contained in the Pennsylvania statutes.  Considerations of comity require that we at least consider these "privileges," as well as the confidentiality interest otherwise protected under the laws of the Commonwealth, although our ultimate task remains the determination of the issue of whether privileges associated with these statutes and the confidentiality that they seek to protect are cognizable under Federal Rule of Evidence 501.

22

Id. at 69.

The Third Circuit explained that privileges under Rule 501 "are ordinarily found in bilateral confidential relations," such as "attorney-client, husband-wife, clergy-communicator, reporter-source, [and] government-informer." Id. at 71.  The reason for this is that "[c]omplex multilateral privileges such as the ones [t]here sought would necessarily be extremely broad and unwieldy to enforce," partly because "[p]resumably . . . it would follow that the privilege could not be waived without the consent of all the potentially vast number of 'holders' of the privilege," rendering the privilege "essentially . . . unwaivable." Id.  Ultimately, the Third Circuit held "that Rule 501 is unsuited for the kind of privilege that appellants have requested: one that maintains its protection despite the express waiver of the primary holder of interests in confidentiality." Id. at 72.  In light of the above analysis, this Court must conduct an inquiry into the specific provisions that Defendants cite as state privileges that should be recognized by the federal common law pursuant to Rule 501.

### (1) PA. R. CRIM. P. 703 IS INAPPLICABLE IN THIS CASE

First, Defendants cite to Pennsylvania Rule of Criminal Procedure 703, which provides, in pertinent part, that: "[a]ll pre-sentence reports and related psychiatric and psychological reports shall be confidential, and not of public record." Pa. R. Crim. P. 703(A); see also Def.'s Letter Mem. 2 (citing Pa. R. Crim. P. 703)).  Additionally, Rule 703(A) provides that the pre-sentence reports and related mental health reports are available to the sentencing judge or anyone assisting the court with sentencing, the Commonwealth's attorney, and the defense attorney.  Pa. R. Crim. P. 703(A)(1) and (2).  It is clear that Rule 703 only applies to pre-sentence reports and

mental health reports prepared for sentencing.  The Court has already determined that, because it was not generated at SCI-Graterford, Plaintiff's pre-sentence report falls outside the scope of his first request for documents and is thus not subject to discovery.  Therefore, the Court need not decide whether Rule 703 of the Pennsylvania Rules of Criminal Procedure should be recognized as a new federal common law privilege because it is inapplicable.

### (2) THE PENNSYLVANIA CRIMINAL HISTORY RECORD INFORMATION ACT, 18 PA.C.S.A. §§ 9101, ET SEQ., IS NOT ENTITLED TO RECOGNITION AS A FEDERAL PRIVILEGE

Defendants also request that the Court recognize a federal common law privilege pursuant to the Pennsylvania Criminal History Record Information Act ("the Act"), 18 Pa.C.S.A. §§ 9101, et seq.  Def.'s Letter Mem. 2 (quoting 18 Pa.C.S.A. § 9105).  18 Pa.C.S.A. § 9105 provides, in pertinent part: "Nothing in this chapter shall be construed to apply to information concerning juveniles, except as provided in section 9123 . . .,  nor shall it apply to intelligence information, investigative information, treatment information, including medical and psychiatric information . . . .  Criminal history record information maintained as a part of these records shall not be disseminated unless in compliance with the provisions of this chapter."  18 Pa.C.S.A. § 9105.

Section 9102 provides that State correctional facilities are considered criminal justice agencies under the Act.  Id. § 9102.  More importantly, Section 9106(c)(4) states that: "[i]nvestigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is

24

based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic." Id. § 9106(c)(4). Finally, Section 9121(d) provides that "[w]hen criminal history record information is maintained by a criminal justice agency in records containing investigative information, treatment information or other nonpublic information, the agency may extract and disseminate only the criminal history record information if the dissemination is to be made to a noncriminal justice agency or individual." Id. § 9121(d).

A few Courts in the Third Circuit have allowed defendants to withhold records from the prisons from discovery as privileged under the Act. In McCrery v. Mark, 1992 U.S. Dist. LEXIS 12562 (E.D. Pa. Aug. 18, 1992), the district court found that an inmate psychological evaluation and other documents were not discoverable in a civil rights case because their dissemination was prohibited under 18 Pa.C.S.A. §§ 9106 and 9121(c). Id. at *1-2, *3-4. The court explained that "[u]nder the statute, the court does not have the authority in making its decision to weigh the importance of the documents to plaintiff's case . . . [n]or does the statute provide for defendant's waiver of the privilege." Id. at *4. Likewise, in Brooks-Bey v. Reid, 1992 U.S. Dist. LEXIS 1163 (E.D. Pa. Feb. 4, 1992), the district court found that pursuant to 18 Pa.C.S.A. §§ 9106, 9102, and 9121(d), a prison transfer memorandum that contained "psychological and psychiatric analysis" was privileged under state law. Brooks-Bey, 1992 U.S. Dist. LEXIS 1163, at *5.

Subsequent cases have rejected the approach taken by the respective district courts in McCrery and Brooks-Bey. For instance, in Puricelli v. Houston, 2000 U.S. Dist. LEXIS 3517 (E.D. Pa. Mar. 14, 2000), the district court examined whether documents that government defendants sought to withhold as confidential reports of child abuse under 23 Pa.C.S.A. § 6339 should be considered as privileged under federal law in a civil rights lawsuit. Puricelli, 2000

25

U.S. Dist. LEXIS 3517, at *5-7.  For purposes of evaluating the applicability of the state privilege under federal law, the court assumed that the state statute "create[d] the broad privilege [that] the Defendants allege[d]" and explained that "[e]ven so, such a privilege does not automatically apply in a federal question case in federal court."  Id. at *7.  The court declined "to recognize a privilege against the discovery of an abuse investigation file when sought by the subject of the file for the purpose of proving his § 1983 claim."  Id. at *8.  There, the district court examined comparable statutes from other states and could not find any which "expressly create[d] the claimed privilege," and noted that the purpose of the statute was to protect children's privacy, "an interest not furthered when it is the child and his parents who seek the information."  Id. at *9.

Part of the reason the privilege was denied was because "'if state statutory privileges were automatically entitled to recognition under [Rule 501], a state could completely frustrate the ability to prove § 1983 claims . . . by simply passing a statute that privileged all information relating to any' child abuse investigation activity."  Id. (quoting Curtis v. McHenry, 172 F.R.D. 162, 164 n. 2 (W.D. Pa. 1997).  The holding in Puricelli was strictly limited to situations where the subject of a child abuse investigation sought production of the investigatory files to prove his Section 1983 claim.  Puricelli, 2000 U.S. Dist. LEXIS 3517, at *10.  It should also be noted that the court required redaction of the child abuse accuser's name and any information that might reveal it prior to production.  Id.

Both Curtis and another case, D.N. v. Snyder, 2009 U.S. Dist. LEXIS 40481 (M.D. Pa. May 13, 2009), dealt with assertions of privilege in federal court pursuant to the Act.  See Curtis, 172 F.R.D. at 163-65; D.N., 2009 U.S. Dist. LEXIS 40481, at *1-3.  Curtis was a Section 1983

claim where the plaintiffs sought production of "police reports that concern[ed] third parties or

contain[ed] investigative information" to prove their case on a state created danger theory.

Curtis, 172 F.R.D. at 163.  Defendants sought to withhold the documents as privileged under

Section 9106(c)(4) of the Act.  Id.  The court looked to Jaffee v. Redmond, 116 S. Ct. 1923

(1996) for guidance to determine whether state privileges should be adopted into the federal

common law.  Id.  In doing so, the court expressed doubt as to whether Section 9106(c)(4)

created a privilege against civil discovery, but assumed so for purposes of the analysis.  Id.

The district court noted that in Redmond, the Supreme Court of the United States

recognized a psychotherapist-patient privilege as a federal common law privilege after

conducting a thorough review of state law and finding that "the 'psychotherapist privilege' had

been codified, in some form, by all fifty states."  Id. at 164 (citing Redmond, 116 S. Ct. at 1926-

31).  After conducting a review of criminal records statutes from other states, the Curtis court

noted that "there is no authority among the principles of common law for a blanket privilege

against the discovery of police reports simply because they contain investigative information or

related to complaints against third parties," and that "[t]he type of 'uniform judgment' that

existed in Redmond simply [did] not exist [t]here."  Curtis, 172 F.R.D. at 164 (citing Redmond,

116 S. Ct. at 1930-31).  The court compelled production of the documents, and in doing so,

specifically stated in a footnote that it was "declin[ing] to follow" Brooks-Bey and McCrery.

Curtis, 172 F.R.D. at 163 n. 1, 165 (citations omitted).

In D.N., the district court considered the discoverability of documents relating to a former

police officer's employment, "his termination therefrom," and his assault on the plaintiffs.  D.N.,

2009 U.S. Dist. LEXIS 40481, at *3.  The Lebanon County Detective Bureau sought to withhold

the documents from production, arguing that they were privileged under Section 9106(c)(4) of

the Act.  Id. at *1, *6 n.2.  There, the district court noted that "[o]n its face, § 9106(c)(4) does not

contain the word 'privilege,'" and declined to find the documents privileged pursuant to federal

law.  Id. at *6 (citing Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 501; Pearson, 211 F.3d at 68).

      This Court adopts the reasoning of Curtis and D.N.  Notably, both Brooks-Bey and

McCrery were decided before the Third Circuit rendered its opinion in Pearson.  Additionally,

the respective courts in those cases did not engage in a Pearson analysis to determine whether the

Act should be recognized as a federal privilege pursuant to Rule 501; rather, they simply held

that the Act created a state privilege which governed the issues at hand.  See McCrery, 1992 U.S.

Dist. LEXIS 12562, at *4; Brooks-Bey, 1992 U.S. Dist. LEXIS 1163, at *5.  The provisions of

the Act that Defendants rely upon do not explicitly state that they create a privilege and seem to

speak more to confidentiality and the non-public nature of the documents.  See 18 Pa.C.S.A. §§

9102, 9105, 9106(c)(4); see also D.N., 2009 U.S. Dist. LEXIS 40481, at *6.

      Recognition of a federal privilege merely because the Act speaks to the confidentiality of

mental health records retained by a criminal justice agency could prove unworkable under Rule

501.  Indeed, it is difficult to determine who could waive the privilege, as the confidentiality

interests of a criminal defendant, criminal justice agencies, and other individuals, such as those

who assist with investigations, could be implicated by the Act.  See 18 Pa.C.S.A. § 9106(c)(2)

(pertaining to intelligence information); see also id. § 9106(c)(4) (pertaining to investigative and

treatment information).  For instance, in this case, Plaintiff's interest in the confidentiality of his

mental health records and the counselor or therapist's interests in the confidentiality of their

professional opinions could both be implicated.  See id. § 9106(c)(4); see also Beard Decl. ¶ 20.

Such a federal privilege could, under certain circumstances, prove to be unworkable or even unwaivable, as waiver could depend on the consent of numerous parties with confidentiality interests pursuant to the statute.  See Pearson, 211 F.3d at 71 (finding that federal privileges usually apply to "bilateral confidential relations," and noting that recognition of a particular state privilege could prove unworkable or unwaivable in federal court due to the various interests implicated by the statutes in question).

As a result, the Court declines to recognize the relevant provisions of the Act as creating a federal common law privilege.  This does not end the inquiry, however.  As will be explained more fully below, there is another discovery mechanism which the Court finds appropriate under these circumstances to address Defendants' security and confidentiality concerns without impairing Plaintiff's ability to prosecute his claims.

### C.  A PROTECTIVE ORDER PLACING LIMITATIONS ON DISCOVERY IS APPROPRIATE UNDER THESE CIRCUMSTANCES

Even where the Court declines to recognize state privileges in federal court under Rule 501, it does not follow that the documents requested are necessarily discoverable.  Pearson, 211 F.3d at 72.  Indeed, "district courts have the power, under Federal Rule of Civil Procedure 26(c), to issue protective orders constraining--in any of a variety of ways--the release of sensitive information."  Id.  "It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection."  Id. (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994)).  A party seeking a protective order is required to show good cause that they are entitled to

proceetion.  Pearson, 211 F.3d at 72 (quoting Pansy, 23 F.3d at 787).  While the injury that could

result to the "party seeking confidentiality" must be demonstrated "with specificity," the injury

"need be no more than 'embarrassment.'"  Pearson, 211 F.3d at 72-72 (citing Publicker Indus.,

Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984); Cipollone v. Liggett Group, Inc., 785 F.2d

1108, 1121 (3d Cir. 1986)).

      "Rule 26(c) further provides that such orders may be crafted to create any of a broad

range of requirements . . . ."  Pearson, 211 F.3d at 73 (quoting Fed. R. Civ. P. 26(c)).  Some of

these requirements include:

> (A) forbidding the disclosure or discovery; (B) specifying terms,
> including time and place, for the disclosure or discovery; (C)
> prescribing a discovery method other than the one selected by the
> party seeking discovery; (D) forbidding inquiry into certain matters,
> or limiting the scope of disclosure or discovery to certain matters; (E)
> designating the persons who may be present while the discovery is
> conducted; (F) requiring that a deposition be sealed and opened only
> after court order . . . .

Fed. R. Civ. P. 26(c)(1); see Pearson, 211 F.3d at 73 (citing Fed. R. Civ. P. 26(c)).  In Pearson,

the Third Circuit reasoned that "Rule 26(c) provides district courts with the power to formulate a

detailed solution that reflects the concerns of particular individual disputes," and that "[t]o that

extent, it provides a superior mechanism for the resolution of the present dispute than does

Federal Rule of Evidence 501."  Pearson, 211 F.3d at 73.

      The Third Circuit noted that the best approach was to "focus less on the letter of the

Pennsylvania statutes than on an accommodation of plaintiff's legitimate discovery interests with

the legitimate interests of third parties in the confidentiality of portions of the requested

material."  Id.  The "particular needs of the parties" is also an appropriate consideration with

respect to protective orders under Rule 26.  Id.  The Third Circuit noted that the plaintiff's

attorneys in Pearson simply sought to "develop[] her case," and they did not object to "an order

that, for instance, prevented anyone other than counsel from viewing or learning the contents of

any of the material sought."  Id.  Additionally, "[t]he parties may later seek to modify the order as

appropriate at a later stage."  Id. (citing Pansy, 23 F.3d at 784).

　　　　Under the facts of this case, a protective order limiting the scope of the discovery of

Plaintiff's mental health records is both appropriate and necessary.  As previously explained, the

Court does not doubt the legitimacy of Defendants' concerns regarding order and safety in the

prisons, as well as the effectiveness of the treatment of their inmates.  Further, while we noted

above that Plaintiff is no longer housed at SCI-Graterford and has no direct opportunity to

retaliate against the mental health professionals that generated these documents, it is conceivable

that Plaintiff could be transferred or otherwise end up in the same facility as these individuals at

some later point.  Moreover, this Court ought not open the floodgates in prison litigation by

allowing a Plaintiff to have a wholesale right to review his own mental health records, in light of

the concerns outlined in Secretary Beard's declaration.  It is easy to conceive how routine

disclosure of a mental health professional's opinions could compromise their ability to render

effective and honest opinions, as Defendants suggest.  Beard Decl. ¶¶ 16, 22.

　　　　We see no need at this stage of the litigation for Plaintiff himself to review his mental

health records or to know of their contents.  However, we do recognize that review of these

materials is important for his attorneys to prepare for the depositions of the professionals who

generated the documents and to develop his theories of the case.  Thus, in light of Plaintiff's

interests in proving his civil rights claims, we find that a protective order "forbidding the

disclosure or discovery" is inappropriate.  See Fed. R. Civ. P. 26(c)(1)(A).

The Court does find that limitations must be placed on the discovery of the mental health records at issue.  Pearson, 211 F.3d at 73 (quoting Fed. R. Civ. P. 26(c)); see also Pansy, 23 F.3d at 787.  First, the documents may be viewed by Plaintiff's attorneys only.  The documents may not be shared with Plaintiff, he may not know of their contents, and Plaintiff's attorneys may not make copies for Plaintiff.  See Pearson, 211 F.3d at 73; Fed. R. Civ. P. 26(c)(1)(B) (indicating that the court can "specify[] terms, including time and place, for the disclosure or discovery"); Fed. R. Civ. P. 26(c)(1)(E) (stating that the Court may "designat[e] the persons who may be present when discovery is conducted").  Additionally, at the conclusion of this litigation, Plaintiff's attorneys must promptly return the documents to the DOC.  See Fed. R. Civ. P. 26(c)(1)(B).

The Court is confident that these restrictions will address Defendants' confidentiality and safety concerns without eviscerating or impairing Plaintiff's ability to prove his Section 1983 claims.  See Pearson, 211 F.3d at 73; see also Mincy v. Chmielewski, 2006 U.S. Dist. LEXIS 77595, at *7-8 (M.D. Pa. Oct. 25, 2006) (ordering production of an inmate's mental health records generated during "the only time period relevant to the complaint" subject to a confidentiality agreement).  Additionally, we note that this order can later be modified if the circumstances render such a modification appropriate.  Pearson, 211 F.3d at 73 (citing Pansy, 23 F.3d at 784).  Therefore, to the extent that Defendants request that we limit the discovery of Plaintiff's mental health records generated at SCI-Graterford, see Def.'s Letter Mem. 3 (citations omitted), Defendants' request is granted.

**3. C**ONCLUSION

After balancing the parties' interests, the Court finds that Plaintiff has overcome Defendants' assertion of the deliberative process privilege over production of his mental health records generated while he was incarcerated at SCI-Graterford.  Moreover, we decline to recognize the relevant provisions of the Pennsylvania Criminal History Record Information Act, 18 Pa.C.S.A. §§ 9101, et seq. as creating a privilege under federal common law.  The appropriate mechanism for the Court to utilize to address both parties' concerns in this case is a protective order limiting the conditions of discovery pursuant to Rule 26(c).  <u>See</u> Fed. R. Civ. P. 26(c)(1)(B) and (E).  An appropriate order will be set forth separately.

<u>     </u>