**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

K. KABASHA GRIFFIN-EL  :  CIVIL ACTION
a/k/a KEITH FEDELE GRIFFIN, :
   Plaintiff,      :
           :
           :
 v.         :
           :
           :
JEFFREY A. BEARD, et al.,  :  NO.  06-2719
     Defendants.  :

## MEMORANDUM AND OPINION

L. FELIPE RESTREPO        SEPTEMBER 4, 2009
UNITED STATES MAGISTRATE JUDGE

   Before the Court is Defendants' Motion to Disqualify Plaintiff's Counsel and supporting

Memorandum of Law (Doc. No. 115).  Submitted in support of Defendants' Motion is the

Declaration of Defendant John Moyer, who is employed as the Security Lieutenant at the State

Correctional Institution at Graterford ("SCI-Graterford").  See Def.'s Mem. Ex. 1 (hereinafter

cited as "Moyer Decl.").  Also before the Court is Plaintiff's Response in Opposition to

Defendants' Motion (Doc. No. 126), to which he has attached the Declarations of attorneys

Michael Puma, Esquire ("Puma"), see Pl.'s Resp. Ex. 1 (hereinafter cited as "Puma Decl."),

Larry L. Turner, Esquire ("Turner"), see id. Ex. 2 (hereinafter cited as "Turner Decl."), Sean W.

Sloan, Esquire ("Sloan"), see id. Ex. 3 (hereinafter cited as "Sloan Decl."), and W. John Lee,

Esquire ("Lee"), see id. Ex. 4 (hereinafter cited as "Lee Decl.").  Defendants have submitted a

Reply (Doc. No. 128), to which Plaintiff submitted a Letter Brief in response (Doc. No. 130).

Following Plaintiff's Letter Brief, defense counsel submitted a response via e-mail, to which

Plaintiff further responded via e-mail (both attached to Doc. No. 130).  For the reasons which

follow, Defendants' Motion to Disqualify is denied.

## I. Background

In this lawsuit, Plaintiff K. Kabasha Griffin-El is suing various employees of the

Department of Corrections ("DOC") claiming violations of his First, Fourth, and Fourteenth

Amendment rights under 42 U.S.C. § 1983, which allegedly occurred as a result of two searches

of his prison cell while he was incarcerated at SCI-Graterford.  See Second Am. Compl. ¶¶ 1, 2-

105.  Plaintiff also seeks a declaratory judgment.  Id. ¶¶ 1, 81-83.  The procedural history of this

case has been adequately set forth in the Court's previous Memoranda and Opinions; thus, only

the facts that pertain to the current Motion to Disqualify will be set forth below.

Plaintiff initiated this action pro se after being granted leave to proceed in forma pauperis

pursuant to 28 U.S.C. § 1915 by the Honorable Timothy J. Savage.  See Order dated 8/1/06 (Doc.

No. 4).  Plaintiff later filed a Motion for appointment of counsel (Doc. No. 25), which Judge

Savage granted.  See Order dated 7/3/07 (Doc. No. 27).  Plaintiff is now represented by attorneys

Turner, Sloan, and Lee of the firm Morgan, Lewis & Bockius LLP ("Morgan Lewis").  Turner

Decl. ¶¶ 2-3.  On July 2, 2008, Judge Savage entered an order referring the case to this Court for

all further proceedings after the parties consented to proceed in front of the undersigned pursuant

to 28 U.S.C. § 636(c).  See Order dated 7/2/08 (Doc. No. 62); Consent of Def. dated 7/1/08 (Doc.

No. 60); Consent of Pl. dated 6/30/08 (Doc. No. 61).

After defense counsel e-mailed the Court on June 24, 2009 to notify the undersigned of a

potential conflict of interest (to which Plaintiff's counsel responded and defense counsel replied), see Def.'s Mem. Ex. 3, Defendants' filed the instant Motion to Disqualify on July 13, 2009. Defendants allege that there is a conflict of interest with Plaintiff's counsel because Puma, another Morgan Lewis attorney not involved in this case, is handling a case where Moyer is a witness serving as the custodian of records for SCI-Graterford.  See Def.'s Mem. 1-5.

Moyer is the SCI-Graterford employee who prepared the confiscation slip outlining the materials seized from Plaintiff's cell; he also issued a misconduct report after Plaintiff refused to divulge the password to some password-protected materials located on a computer disk seized from his cell.  Def.'s Mem. 2.  Defendants argue that because Plaintiff attached these documents to his initial *pro se* pleadings, Plaintiff had knowledge before counsel even entered their appearance that Moyer would be one of the main Defendants in this case.  Id.  Attorneys Sloan and Lee met with Moyer and defense counsel in February 2008 at SCI-Graterford to inspect the items confiscated from Plaintiff's cell and to inquire as to "whether certain documents could be copied and/or returned to [P]laintiff."  Id.

Puma and Turner are partners in Morgan Lewis's labor and employment group ("LEPG").  Puma Decl. ¶ 2; Turner Decl. ¶ 2.  Lee and Sloan are associates in Morgan Lewis's LEPG.  Lee Decl. ¶ 2; Sloan Decl. ¶ 2.  Michelle Pardoll ("Pardoll") is a former LEPG associate who ended her employment with Morgan Lewis in October 2008.  Puma Decl. ¶ 4.  Puma is currently working on a *pro se* case for the Support Center for Child Advocates where Morgan Lewis attorneys are "representing three children in the following action: In the matter of Clinton, Johnson, and Johnson ('Clinton'), DP Nos. 3218-06-10, 6010-07-07, and 6405-06-10 (Pa. Comm. Pl. Philadelphia)" (hereinafter "the Clinton case").  Id. ¶ 3-4.  In April 2008, Moyer was

contacted by Pardoll, who was formerly Puma's subordinate working on the Clinton case, in connection with that matter.  Moyer Decl. ¶ 6-7; Puma Decl. ¶ 6.  Ms. Pardoll explained that she needed to obtain "records relating to . . . an inmate formerly housed at [SCI-]Graterford."  Moyer Decl. ¶ 6.  Moyer "advised her of the records that would support her case, and told her that she would need a subpoena for such records."[1]  Id. ¶ 7.

On May 6, 2008, Puma sent a subpoena to Moyer ordering production of the former inmate's visitor sign-in and sign-out sheets, telephone call logs, mail logs, and recorded telephone conversations.  Moyer Decl. ¶ 8.  Moyer produced the records to Pardoll on May 8, 2008 at SCI-Graterford.  Id. ¶ 9.  Moyer provided Pardoll with a chain of custody receipt, which she signed on behalf of Puma, and explained to her that "the receipt was needed to show the chain of custody."  Id.  Puma issued a second subpoena to Moyer on May 12, 2008 asking him to "be available on May 23, 2008 to testify [at a hearing in the Clinton case] as the custodian of records regarding the documents being produced by the prison."  Puma Decl. ¶ 7.  When the hearing was rescheduled for August 2008, Puma issued another subpoena for Moyer to be available on that date.  Id.

Moyer states that he had several conversations with Pardoll and Puma.  Moyer Decl. ¶ 10.  During a telephone conversation, Puma told Moyer that he may not need to testify as custodian of records in the Clinton case if the court would accept a declaration from Moyer authenticating the records.  Puma Decl. ¶ 9.  Puma prepared such a declaration for Moyer's signature after receiving the advice of a Special Master that the court would likely accept and enter a declaration into

---

[1]In the Clinton matter, the Department of Human Services brought a petition to terminate the parental rights of the mother of three children.  Puma Decl. ¶ 5.  The father, who was formerly housed at SCI-Graterford, has voluntarily relinquished his parental rights.  Id.

evidence absent an objection by the parties.  Id. ¶ 9-10.  The hearing in the Clinton case was
rescheduled yet again; as such, Puma issued Moyer another subpoena in case the court required
his presence.  Id. ¶ 12.  Moyer called Puma to inquire whether he would have to testify in the
Clinton case; during that conversation, Moyer told Puma that he would be in Morgan Lewis's
offices on Friday, June 26, 2009 for a deposition in a case that involved him.  Id. ¶ 13.  Puma
asked which attorneys were handling the case, and Moyer responded that one of the attorneys
names was "Lee."  Id.

"Neither [] Pardoll nor [] Puma ever advised [Moyer] that attorneys at their law firm were
handling [P]laintiff's lawsuit against [him]."  Moyer Decl. ¶ 13.  It was not until June 24, 2009
that Moyer realized that Puma worked at the same firm as counsel in this case.  Id. ¶ 14.
Likewise, Puma was unaware prior to June 24, 2009 that Moyer was involved in litigation that
concerned Morgan Lewis.  Puma Decl. ¶ 14.  After being copied on defense counsel's original e-
mail to this Court notifying the undersigned of a potential conflict of interest, Puma advised
Turner and Lee that Moyer was simply the custodian of records in the Clinton case and reviewed
the facts contained in Turner's response e-mail.  Id. ¶ 15.

Puma is the Deputy Assignment Partner in Morgan Lewis's LEPG.  Id. ¶ 18.  In this role,
Puma gives assignments to the LEPG associates.  Id.  Through this administrative role, Puma
knew that Turner, Sloan, and Lee were working on a *pro bono* prisoner case.  Id.  Puma states
that this was his only knowledge of the present case, and avers that he has not learned anything
about this matter since the June 24, 2009 exchange of e-mails with this Court.  Id.  Prior to June
24, 2009, Puma did not share any information that he learned from Moyer with Turner, Sloan, or
Lee.  Id. ¶ 16-17.  Puma's communications with Moyer were limited to the Clinton case, and to

Puma's knowledge, Moyer is unrepresented in that matter.  Id. ¶ 21-22.

Turner avers that Moyer "is not and never has been a client of Morgan Lewis."  Turner Decl. ¶ 5.  Turner, Sloan, and Lee were unaware that Moyer was involved in any matters concerning Morgan Lewis, including the Clinton case.  Turner Decl. ¶ 6; Sloan Decl. ¶ 4; Lee Decl. ¶ 4.  They were unaware of Pardoll and Puma's contacts with Moyer prior to the June 24, 2009 e-mail from defense counsel in this case.  Turner Decl. ¶ 7; Sloan Decl. ¶ 5; Lee Decl. ¶ 5. The only information that they learned about the Clinton case was gleaned from Puma so they could prepare a response to defense counsel's letter.  Turner Decl. ¶ 10; Sloan Decl. ¶ 7; Lee Decl. ¶ 7.  They have not shared any information about this case with Puma, and the only additional knowledge of the Clinton case that they have is that which they learned in connection with defense counsel's present Motion.  Turner Decl. ¶¶ 11-13; Sloan Decl. ¶¶ 8-9; Lee Decl. ¶¶ 8-11.

Turner and Sloan share a secretary, Ms. Jeanne Borschell ("Borschell").  Turner Decl. ¶ 14; Sloan Decl. ¶ 10.  Borschell does not work with Puma or Lee, and she did not work with Pardoll during her tenure at Morgan Lewis.  Turner Decl. ¶ 14; Sloan Decl. ¶ 10.  Additionally, there have been two paralegals assigned to this case: Ms. Rachael Hirshenhorn ("Hirshenhorn") (no longer employed by Morgan Lewis), and Ms. Rebecca Guzman ("Guzman").  Turner Decl. ¶ 15; Sloan Decl. ¶ 11; Lee Decl. ¶ 12.  Neither Hirshenhorn nor Guzman have ever worked on the Clinton case.  Turner Decl. ¶ 15; Sloan Decl. ¶ 11; Lee Decl. ¶ 12.  Turner, Sloan, and Lee have no involvement with the Clinton matter, Puma and Pardoll have had no involvement in this matter, and the attorneys have not shared information regarding the two cases beyond that which was necessary to respond to the current Motion to Disqualify.  Turner Decl. ¶¶ 16-19; Sloan

6

Decl. ¶¶ 12-15; Lee Decl. ¶¶ 13-16.


## II. STANDARD OF REVIEW

"Federal courts have the inherent power to supervise the professional conduct of attorneys appearing before the courts, which includes the authority to disqualify an attorney." Jackson v. Rohm & Haas Co., 2008 U.S. Dist. LEXIS 65632, at *4-5 (E.D. Pa. Aug. 26, 2008).  Motions to disqualify counsel are generally disfavored and are viewed as an "extreme sanction" in this District.  Wolf, Block, Schorr, & Solis-Cohen LLP v. Navon, 2006 U.S. Dist. LEXIS 9859, at *4 (E.D. Pa. Mar. 9, 2006); Jackson, 2008 U.S. Dist. LEXIS 65632, at *5 (citations omitted); Reg'l Employers' Assur. Leagues Voluntary Emples. Beneficiary Ass'n Trust v. Castellano, 2009 U.S. Dist. LEXIS 56102, at *5 (E.D. Pa. July 1, 2009) (citing Shade v. Great Lakes Dredge & Dock Co., 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999)).  "This is so not only because disqualification robs one's adversary of [his] counsel of choice, but also because of the risk . . . that one could subvert the ethical rules in an attempt to use them as a procedural weapon."  Navon, 2006 U.S. Dist. LEXIS 9859, at *4-5 (citing Pennsylvania Rules of Prof'l Conduct, Preamble and Scope ¶ 19) (additional citations omitted).

"The Local Rules of the United States District Court for the Eastern District of Pennsylvania incorporate the Pennsylvania Rules of Professional Conduct, which the Supreme Court of Pennsylvania has adopted." Castellano, 2009 U.S. Dist. LEXIS 56102, at *6 (citing E.D. Pa. R. Civ. P. 83.6(IV)(B)).  The Third Circuit has instructed that "[a] district court should grant a motion to disqualify counsel 'only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule.'"

Castellano, 2009 U.S. Dist. LEXIS 56102, at *4 (quoting United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980)).  This Court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions."  Castellano, 2009 U.S. Dist. LEXIS 56102, at *4-5 (quoting Miller, 624 F.2d at 1201).  "Even if the court finds that an attorney violated a disciplinary rule, 'disqualification is never automatic.'"  Castellano, 2009 U.S. Dist. LEXIS 56102, at *5 (quoting Miller, 624 F.2d at 1201).  The moving party "bears the burden of clearly showing that continued representation would be impermissible.  Vague and unsupported allegations are not sufficient to meet this standard."  Castellano, 2009 U.S. Dist. LEXIS 56102, at *5 (quoting Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)).

## III. DISCUSSION

Defendants argue that this Court should disqualify Turner, Sloan, and Lee pursuant to Rules 1.7 and 4.2 of the Pennsylvania Rules of Professional Conduct ("PRPC") and for failure to avoid the appearance of impropriety.  Def.'s Mem. 5.  The Court will address each of Defendants' arguments in turn, and, for the reasons set forth below, Defendants' Motion to Disqualify the Morgan Lewis attorneys from representing Plaintiff in this action is denied.

## A. RULE 1.7(a)

Defendants first invoke Rule 1.7(a) of the PRPC in support of their Motion to Disqualify.  Def. Mem. 7.  Defendants allege that "Morgan Lewis attorneys did not consult with [D]efendant Moyer about their potential conflict of interest in working with him in the Clinton matter, while

at the same time other Morgan attorneys in the same Department are litigating against him in this case."  Id.  Defendants further suggest that Plaintiff's counsel should have "obtain[ed] a written waiver from Moyer following such disclosure and consultation."  Id.  Defendants claim that a witness may be treated as a client under Rule 1.7, and, as a consequence, Plaintiff's counsel violated Rule 1.7(a) by suing Moyer in this case while their colleague is using him as a witness in the Clinton case.  Def.'s Mem. 7-8; Def.'s Reply 1-2 (citing In re Cendant Corp. Sec. Litig., 124 F. Supp. 2d 235, 241-42 (D.N.J. 2000)) (hereinafter cited as "Cendant").  Plaintiff responds that no conflict exists in this case because Moyer "is not, and has never been, a client of Morgan Lewis."  Pl.'s Resp. 5.  Plaintiff asserts that Defendants' reliance on Cendant "for their unwarranted contention that the conflict of interest rule can apply to a person who is 'a witness in one matter and a party in another,' but is not a client of the lawyer in question in either matter . . . is a gross misreading of Cendant []."  Pl.'s Resp. 6.

Rule 1.7 states, in pertinent part:

> (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one **client** will be directly adverse to **another client**; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Pa. R. P. C. 1.7(a) (emphases added).[2]  Explanatory Comment 6[3] to Rule 1.7 explains that

"absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer

**represents** in some other matter, even when the matters are wholly unrelated."  Pa. R. P. C. 1.7,

Comment 6 (emphasis added).  "[A] directly adverse conflict may arise when a lawyer is required

to cross-examine a client who appears as a witness in a lawsuit involving another client."  Id.

Comment 24 notes that a conflict of interest exists "if there is a significant risk that a lawyer's

action on behalf of one client will materially limit the lawyer's effectiveness in representing

another client in a different case, for example, when a decision favoring one client will create a

precedent likely to seriously weaken the position taken on behalf of the other client."  Id.

Comment 24.

Defendants cite Cendant extensively to support the proposition that a witness can be

included in the meaning of "client" under Rule 1.7.  See, e.g., Def.'s Mem. 7; Def.'s Reply 1

(citing Cendant, 124 F. Supp. 2d at 241-42).  In Cendant, an attorney who was Ernst & Young's

"trial counsel of choice" became employed by a new law firm.  Cendant, 124 F. Supp. 2d at 237-

38.  The attorney's new firm represented a potential witness adverse to Ernst & Young whom

had been served a subpoena to produce documents.  Id.  Applying the New Jersey Rules of

Professional Conduct, the court relied heavily on the American Bar Association's ("ABA")

---

[2]Subsection (b) then proceeds to describe the situations under which a lawyer can represent a client despite a concurrent conflict of interest if the clients give informed consent. Pa. R. P. C. 1.7(b).

[3]With respect to applying the PRPC, another court in this District has explained that "[t]he comments are intended as guides to interpretation, but the text of each Rule is authoritative." Carter-Herman v. City of Philadelphia, 897 F. Supp. 899, 902 n. 2 (E.D. Pa. 1995).

Formal Opinion 92-367, which explains that an attorney's representation of one party might be materially limited where the attorney would be faced with "examining one's own client as an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client." Id. at 241-42 (quoting ABA Formal Opinion 92-367 (1992)).

No such circumstances exist in this case. Moyer is not a client of Morgan Lewis in this case nor in the Clinton case. To the contrary, Moyer is a witness in the Clinton case, subpoenaed by Puma to testify as the custodian of records. Moyer is a Defendant in this case. Defendants do not cite any authority which would suggest that Morgan Lewis's representation of Plaintiff would be materially limited in a situation where another attorney has subpoenaed his records and may need to call him to testify as the custodian of those records. Nor can they assert that Morgan Lewis's "representation" of Moyer would be limited, because Morgan Lewis does not represent him in any capacity. As such, the Morgan Lewis attorneys cannot be said to owe any duty to Moyer under Rule 1.7(a). Furthermore, Defendants have not established that the Morgan Lewis attorneys' representation of Mr. Griffin-El would be materially limited by Moyer testifying as custodian of records in the Clinton case.

The other two cases cited by Defendants are also inapposite. Both Int'l Bus. Mach. Corp. v. Levin, 579 F.2d 271 (3d Cir. 1978) and Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384 (2d Cir. 1976) involved cases where an attorney sought to sue one client on behalf of another client in a different proceeding. See Levin, 579 F.2d at 275-77; Cinerama, 528 F.2d at 1386. Because Moyer is not a client of Morgan Lewis and never has been, this line of cases is inapplicable. A situation where a law firm sues a person in one lawsuit and then calls him as the custodian of records in another is clearly not one where a law firm is suing a client on behalf of

11

another client.

Since Defendants have failed to demonstrate that counsel's conduct is in violation of Rule 1.7(a), it cannot be said "that disqualification is an appropriate means of enforcing the applicable disciplinary rule." Castellano, 2009 U.S. Dist. LEXIS 56102, at *4 (quoting Miller, 624 F.2d at 1201). As such, Defendants have not met their burden of "clearly showing that continued representation would be impermissible." Castellano, 2009 U.S. Dist. LEXIS 56102, at *5 (quoting Cohen, 844 F. Supp. at 1067). Consequently, the Court finds that the extreme sanction of disqualification is not appropriate on the basis of a purported Rule 1.7(a) violation. See Navon, 2006 U.S. Dist. LEXIS 9859, at *4; Jackson, 2008 U.S. Dist. LEXIS 65632, at *5; Castellano, 2009 U.S. Dist. LEXIS 56102, at *5 (citing Shade, 72 F. Supp. 2d at 520).

## B. RULE 4.2

Defendants next argue that disqualification is appropriate because Puma and Pardoll contacted Moyer, a represented person, to discuss "Internal Security procedures and records" without first notifying his counsel and obtaining counsel's consent. Def.'s Mem 9-10. Defendants argue that this conduct violated Rule 4.2 of the PRPC. Id. at 9. Defendants further argue that under Rule 1.10, the disqualification should be imputed to all Morgan Lewis attorneys. Id. at 10. Plaintiff responds by arguing that Rule 4.2 only prohibits counsel from contacting a party represented by counsel concerning the case in which that party is represented. Pl.'s Resp. 7. Plaintiff further asserts that Rule 1.10 is not applicable to Rule 4.2. Id. at 8.

Rule 4.2 states, in pertinent part:

> In representing a client, a lawyer shall not communicate **about the**

12

> **subject of the representation** with a person the lawyer **knows to be represented** by another lawyer **in the matter**, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa. R. P. C. 4.2 (emphases added). Comment 2 explains that Rule 4.2 "applies to communications with any person who is represented by counsel concerning the matter to which the communication relates." Pa. R. P. C. 4.2, Comment 2. Next, Comment 4 notes that under Rule 4.2, "communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation" is permissible. Id., Comment 4. As an example, Comment 4 notes that "the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer . . . either from communicating with nonlawyer representatives of the other regarding a separate matter." Id. There is nothing in the text of Rule 4.2 nor the explanatory comments which indicates that Rule 1.10 works in tandem with Rule 4.2. Any other reading of the rule would make little sense in light of the fact that Rule 1.10 deals with the imputation of conflicts of interest, not with attorneys contacting represented persons without counsel's consent.[4] See, e.g., Pa. R. P. C. 4.2 & Comments 1-9; Pa. R. P. C. 1.10.

Because Moyer is not represented in the Clinton case, Rule 4.2 is inapplicable and Puma and Pardoll did not violate any ethical rule by contacting him in connection with his status as the custodian of records at SCI-Graterford. Even if Moyer was represented in the Clinton case,

---

[4]Defendants' reliance on United States v. Stout, 723 F. Supp. 297, 313 n. 14 (E.D. Pa. 1989) to support the proposition that Rule 1.10 imputes disqualification to all members of an attorney's law firm is misplaced. In Stout, the court noted that an attorney's disqualification for a conflict of interest was imputed to the members of his firm. Id. As noted above, Rule 4.2 does not concern conflicts of interest.

which he clearly is not, Defendants have not adduced any proof that Puma **knew** of those facts.

See Pa. R. P. C. 4.2.  Puma was not even aware that Moyer was involved in the case at bar.

Therefore, Rule 4.2 has clearly not been violated by the Morgan Lewis attorneys.

As Plaintiff points out, the cases cited by Defendants in support of their Motion are distinguishable because they involved situations where counsel communicated with an opposing party (or employees thereof) who were represented in the lawsuit about matters that were the subject of the party's representation.  See Pl.'s Resp. 8 (citations omitted); Def.'s Mem. 9 (citations omitted); EEOC v. Hora, Inc., 239 Fed. Appx. 728, 730-31 (3d Cir. 2007) (finding in an employment discrimination case that counsel did not violate Rule 4.2 where she contacted an administrative assistant employed by the represented employer-defendant); Inorganic Coatings, Inc. v. Falberg, 926 F. Supp. 517, 518-21 (E.D. Pa. 1995) (finding plaintiff's attorney in violation of Rule 4.2 and granting the motion to disqualify where counsel discussed the merits of the case and engaged in settlement discussions with the defendant without the knowledge of defense counsel); Univ. Patents, Inc. v. Kligman, 737 F. Supp. 325, 328-29 (E.D. Pa. 1990) (citations omitted) (finding counsel in violation of Rule 4.2 and granting a disqualification motion in part where defense counsel engaged in *ex parte* communications with certain high-ranking employees of a represented university); Carter-Herman, 897 F. Supp. at 901-04 (permitting plaintiff's counsel to conduct *ex parte* interviews with police officers ranked below lieutenant, but not those officers with managerial responsibilities).  Because Moyer is not represented in the Clinton case, these cases are not applicable.

Insofar as Defendants argue that the things learned by Puma and Pardoll about prison records and procedures through Moyer cover the same "matter" as that which is covered in this

case, Defendants arguments must fail.  See Def.'s Mem. 10.  As Plaintiff points out, Moyer's

Declaration in the Clinton case addresses things such as another inmate's incarceration, visitor

lists and visitor history, his inmate phone list and records, and "the fact that all inmate telephone

conversations are recorded."  Pl.'s Resp. 9-10.  Plaintiff has not requested his own visitor and

phone records in this case.  See id. at 10 ("None of the information in Lt. Moyer's declaration has

any bearing on the Griffin-El matter.").  Therefore, it cannot be said that Puma and Pardoll

contacted Moyer about the subject matter of his representation in this case.[5]  Pa. R. P. C. 4.2.

Because Moyer is not represented in the Clinton matter, Pardoll and Puma's

communications with Moyer in connection with that case did not violate Rule 4.2, and it cannot

be said "that disqualification is an appropriate means of enforcing the applicable disciplinary

rule."  Castellano, 2009 U.S. Dist. LEXIS 56102, at *4 (quoting Miller, 624 F.2d at 1201).

Defendants have thus failed to meet their burden of proving that Morgan Lewis's continued

representation of Plaintiff in this matter is impermissible.  Castellano, 2009 U.S. Dist. LEXIS

56102, at *5 (quoting Cohen, 844 F. Supp. at 1067).  Therefore, the Court does not see it fit to

impose the extreme sanction of disqualification under these circumstances.  See Navon, 2006

---

[5]In a footnote, Defendants speculate that attorneys Turner, Sloan, and Lee could have
used Moyer as an "informational mole" and may have requested chain of custody documents for
the items confiscated from Plaintiff's cell and his mail log after learning information provided to
them by Puma and Pardoll.  Def.'s Mem. 9 n. 1 and 11.  Defendants do not provide the date
Plaintiff requested these forms in order to show that he requested those documents **after** Puma
and Pardoll communicated with Moyer.  Moreover, Turner, Sloan, and Lee have all declared
under penalty of perjury that they never communicated with Puma and Pardoll regarding the
Clinton case and never learned of any information that Moyer provided them in connection
therewith.  Defendants have offered no proof to the contrary.  As such, these unsupported and
vague allegations are insufficient to carry Defendants' burden of showing that, under the **facts** of
the case, continued representation is impermissible.  See Castellano, 2009 U.S. Dist. LEXIS
56102, at *5 (quoting Cohen, 844 F. Supp. at 1067).

U.S. Dist. LEXIS 9859, at *4; <u>Jackson</u>, 2008 U.S. Dist. LEXIS 65632, at *5; <u>Castellano</u>, 2009

U.S. Dist. LEXIS 56102, at *5 (citing <u>Shade</u>, 72 F. Supp. 2d at 520).


### C. APPEARANCE OF IMPROPRIETY

Defendants argue that even if the Morgan Lewis attorneys did not engage in a technical

violation of any relevant PRPC, this Court can and should disqualify counsel from representing

Plaintiff for their failure to avoid the appearance of impropriety.  Def.'s Reply 2.  Because

Defendants assert that this Court can disqualify counsel solely on the basis that counsel has failed

to avoid the appearance of impropriety, the Court addresses this issue separately from

Defendants' rule-based arguments.  <u>See</u> Def.'s Reply 2 (citing <u>In re Grand Jury Investigation</u>, 447

F. Supp. 2d 453, 458 (E.D. Pa. 2006) (citation omitted); <u>Levin</u>, 579 F.2d at 283).  In Defendants'

Reply brief, they seem to argue that, examining the totality of the facts and circumstances, the

conduct of the Morgan Lewis attorneys has the appearance of impropriety.  <u>See</u> Def.'s Reply 2-5.

Plaintiff responds that Defendants' supporting cases are no longer good law because they

are "based on a now non-existent Local Rule 11 adopting the American Bar Association's Model

Rules of Professional Conduct ('ABA Model Rules'); and . . . are based on Canon 9 . . . of a

prior version of the ABA Model Rules."  Pl's Resp. 10-11 (citations omitted).  Plaintiff

distinguishes the other cases cited by Defendants in their Reply and subsequent e-mails because,

in those cases, the respective courts found that the attorneys had committed actual ethical rule

violations.  <u>Id</u>. at 11 (citations omitted); <u>see also</u> Pl's Letter Br. dated 8/6/09, at 2; Pl.'s e-mail

dated 8/6/09 (both contained in Doc. No. 130).

In Pennsylvania, "[t]he Code of Professional Responsibility was repealed and replaced

with the [PRPC], effective April 1, 1988." <u>Office of Disciplinary Counsel v. Zdrok</u>, 645 A.2d

830, 834 n. 3 (Pa. 1994).  Canon 9 of the previous Code of Professional Responsibility stated that

"[a] lawyer should avoid even the appearance of impropriety." <u>Commonwealth v. E. Dawn</u>

<u>Mobile Home Park, Inc.</u>, 405 A.2d 1232, 1234 (Pa. 1979) (citing Code of Prof. Resp., Canon 9).

There is no such "appearance of impropriety rule" set forth in the text of the PRPC. <u>See, e.g.</u>, Pa

R. P. C. 1.7 and 4.2.

This Court is not persuaded by the case law set forth in Defendants' moving papers.

Defendants cite <u>Levin</u> and <u>In re Grand Jury Investigation</u> to support the proposition that failure to

avoid the appearance of impropriety is grounds for disqualification and that disqualification need

not be based on a specific ethical rule violation.  Def.'s Reply 2 (citing <u>Levin</u>, 579 F.2d at 283; <u>In</u>

<u>re Grand Jury Investigation</u>, 447 F. Supp. 2d at 458 (citation omitted)).  In <u>Levin</u>, the Third

Circuit did in fact note that attorneys may be disqualified for failing to avoid the appearance of

impropriety.  <u>Levin</u>, 579 F.2d at 283 (citations omitted).  The district court in <u>Levin</u>, pursuant to

its Local Rules, applied the amended version of the ABA Code of Professional Conduct that had

been adopted by the New Jersey Supreme Court in 1971.  <u>Id.</u> at 279 n. 2.  The Third Circuit

upheld the district court's decision to disqualify counsel only after finding that the relevant

ethical rule had been violated and that an actual conflict of interest existed.[6]  <u>Id.</u> at 281-83.

---

[6]Defendants also rely on two cases that were decided during a time when this District
relied on the American Bar Association's Code of Professional Responsibility to govern attorney
conduct.  <u>See</u> Def.'s Mem. 6 (citing <u>Kramer v. Scientific Control Corp.</u>, 534 F.2d 1085, 1088-89
(3d Cir. 1976); <u>Richardson v. Hamilton Int'l Corp.</u>, 469 F.2d 1382, 1383-84 (3d Cir. 1972)).
Canon 9 of the ABA's Code of Professional Responsibility stated that lawyers should avoid the
appearance of impropriety, and the Third Circuit in <u>Kramer</u> and <u>Richardson</u> noted that attorneys
could be disqualified for failing to do so.  <u>Kramer</u>, 534 F.2d at 1089 (citing <u>Richardson</u>, 469 F.2d
at 1385-86 & n. 12).  Notably, in both of those cases, the Third Circuit **also** found that actual
conflicts of interest existed.  <u>Kramer</u>, 534 F.2d at 1093; <u>Richardson</u>, 469 F.2d at 1385-86.  These

In <u>In re Grand Jury Investigation</u>, the district court found that there was a number of potential and actual conflicts of interest where a law firm attempted to represent multiple target and non-target witnesses before a grand jury.  <u>In re Grand Jury Investigation</u>, 447 F. Supp. 2d at 458-59.  The witnesses presumably could have become adverse to one another, for example, if one witness represented by the firm decided to cooperate with the government against another. <u>Id.</u> at 458-59.  Additionally, the firm had an actual conflict of interest in representing two target witnesses where the government had offered one of them immunity due to the fact that the witness with immunity could potentially end up testifying against the other at trial.  <u>Id.</u> at 459 (citations omitted).  There were also financial conflicts in the way that the joint representation was being funded, along with potential conflicts that could have caused the law firm's duty of confidentiality to some of its clients to be compromised.  <u>Id.</u> at 460-61.  None of these facts are relevant to the present case, and this Court has already found that no actual conflict of interest exists in this matter under the PRPC.

The only other recent cases cited by Defendants are found in their Reply and defense counsel's e-mail response dated August 6, 2009.  <u>See</u> Def.'s Reply 5 (citing <u>Willis v. Carroll Twp.</u>, 2008 WL 3200712, at *1 n. 4 (M.D. Pa. Aug. 5, 2008) (citations omitted)); <u>see also</u> Def.'s

_____

cases are also distinguishable because the PRPC have since been adopted as the applicable rules governing attorney conduct in this District.  The Court also notes that Defendants' reliance on <u>Cendant</u> for their appearance of impropriety argument is misplaced.  Def.'s Mem. 7 (citing <u>Cendant</u>, 124 F. Supp. 2d at 242).  In <u>Cendant</u>, the District Court for the District of New Jersey applied the relevant New Jersey Rules of Professional Conduct ("RPC").  <u>Cendant</u>, 124 F. Supp. 2d at 240-47.  At that time, there was an appearance of impropriety **rule** embodied in Rule 1.7(c) of the New Jersey RPC.  <u>Id.</u> at 245 (citing N.J. R. P. C. 1.7(c)).  However, the New Jersey Supreme Court later eliminated the appearance of impropriety rule when it adopted amendments to the RPC in 2004.  <u>See</u> <u>In re Supreme Court Advisory Comm. on Prof'l Ethics Opinion No. 697</u>, 911 A.2d 51, 54-55 (N.J. 2006) (citing Kevin H. Michels, <u>New Jersey Attorney Ethics--The Law of New Jersey Lawyering</u> 4 (2006) (N.J. Attorney Ethics)).

18

e-mail dated 8/6/09 (citing <u>AAMCO Transmissions, Inc. v. Baker</u>, 2008 WL 5272781, at *2

(E.D. Pa. Dec. 18, 2008); <u>Mun. Revenue Servs., Inc. v. Xspand, Inc.</u>, 537 F. Supp. 2d 740, 745

(M.D. Pa. 2008)).  In all three of these cases, the courts found that there were conflicts of interest

and actual PRPC ethical rule violations, which renders them distinguishable from the case at bar.

<u>See Xspand</u>, 537 F. Supp. 2d at 746-48 (disqualifying attorneys from conducting a deposition of

County Commissioners when the law firm represented the County in civil rights suits because

such conduct violated Rule 1.7(a) and created the appearance of impropriety); <u>Willis</u>, 2008 WL

3200712, at *1 n. 4 (disqualifying an attorney from representing "both a borough and an

individual suing one of the borough's council members" because such conduct violated Rule 1.7

and created the appearance of impropriety); <u>Baker</u>, 2008 WL 5272781, at *2 (citations omitted)

(noting that avoiding the appearance of impropriety is the **purpose underlying** Rule 3.7(a),

which forbids attorneys from combining the roles of advocate and witness unless certain

conditions are met).  This Court has already found that the Morgan Lewis attorneys have not

violated Rule 1.7.  Rule 3.7(a) is clearly inapplicable because none of the attorneys involved in

this case will serve as witnesses at trial.  <u>See</u> Pa. R. P. C. 3.7(a).

  Therefore, to the extent that this Court has discretion to disqualify attorneys for failing to

avoid the appearance of impropriety even where there has not been a violation of an ethical rule,

the imposition of such a sanction on the facts of this case would be excessive and inappropriate.

Defendants have not presented the Court with any case law from this District where a court

disqualified an attorney for failing to avoid the appearance of impropriety in the absence of an

ethical rule violation.  Furthermore, Defendants have provided little **factual** support for their

allegations and have not demonstrated that they have suffered any prejudice.  There is simply no

19

evidence that Plaintiff's attorneys have learned confidential information about the inner workings at SCI-Graterford which could later be exploited to prepare Plaintiff's case.

As noted above, this Court must evaluate whether disqualification is the appropriate means to enforce the disciplinary rule; and in doing so, the Court is required to examine the purpose for the rule and any other competing interests, "such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." Castellano, 2009 U.S. Dist. LEXIS 56102, at *4-5 (quoting Miller, 624 F.2d at 1201). Here, no disciplinary rules have been violated. The Morgan Lewis attorneys serving as Plaintiff's counsel have spent more than a year conducting discovery and developing Plaintiff's theories of the case. Disqualification would unduly prejudice Plaintiff. Perhaps in a perfect world, Plaintiff's counsel would have realized that Moyer was the custodian of records in Puma's case and could have contacted defense counsel as a professional courtesy. However, their failure to do so is not grounds for disqualification on the facts before this Court.

Defendants' vague and speculative allegations regarding the conduct of Plaintiff's counsel and its potential implications are not sufficient to support a motion to disqualify. See Castellano, 2009 U.S. Dist. LEXIS 56102, at *5 (quoting Cohen, 844 F. Supp. at 1067). This Court strongly agrees that attorneys must always avoid the appearance of impropriety. However, in the absence of an ethical rule violation, prejudice to Defendants, or an appearance of impropriety which rises to a level that outweighs the countervailing interests in the case, disqualification is not appropriate.

**IV. CONCLUSION**

The Morgan Lewis attorneys have not violated Rule 1.7 or Rule 4.2 of the PRPC. Furthermore, their conduct has not created an appearance of impropriety that rises to a level which would persuade the Court to require disqualification.  Consequently, Defendants' Motion to Disqualify attorneys Turner, Sloan, and Lee and the law firm of Morgan Lewis is denied.  An appropriate order will be set forth separately.

21