IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K. KABASHA GRIFFIN-EL<br>a/k/a KEITH FEDELE GRIFFIN,<br>Plaintiff, | : <br> : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| JEFFREY A. BEARD, et al.,<br>Defendants. | : <br> : | NO. 06-2719 |

## MEMORANDUM AND ORDER

L. FELIPE RESTREPO                                                            APRIL 30, 2010
UNITED STATES MAGISTRATE JUDGE

       Before the Court is the Motion of Defendants, William Banta, Jeffrey A. Beard, Robert Bitner, Mary Canino, David DiGuglielmo, Thomas Dohman, Jason Dombrosky, William Fairall, Francis Field, Gerald Galinski, Michael Lorenzo, Jaime Luquis, John W. Moyer, Sylvia Pallott, Ronald Quick, Thomas Scarpati, John S. Shaffer, Wendy Shaylor, Guy Smith, Earl E. Thomas, Kim Ulisny, and Donald T. Vaughn, for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, and plaintiff's opposition thereto.[1] In support of their motion, defendants assert the following grounds for relief: (1) plaintiff's claims under 42 U.S.C. § 1983 against defendants Beard, Dohman, Fairall, Shaffer, and Vaughn fail for lack of personal involvement in any constitutional wrongdoing; (2) defendants are entitled to judgment as a

---

[1]At oral argument before this Court on Feb. 16, 2010, plaintiff's counsel confirmed the withdrawal of plaintiff's claims against defendants, Vaughn, Luquis, and Ulisny. Accordingly, plaintiff's claims against those defendants are dismissed. (Oral Arg. 2/16/10, at 2-6.) In addition, it was agreed by counsel at oral argument that Gerald Sobotor was not served with original process, and all claims against him are dismissed as well. (Id. at 6; see also Defs.' Reply Br. 22 n.9.)

matter of law on plaintiff's claim for declaratory relief; (3) plaintiff cannot show an "actual injury" from the alleged confiscation of his legal materials; alternatively, the rule of Heck v. Humprhrey, 512 U.S. 477 (1974), bars plaintiff's First Amendment access-to-courts claims; (4) as a matter of law, plaintiff cannot prevail on his First Amendment retaliation claims; (5) no reasonable jury could find that defendants violated plaintiff's right to due process; (6) no reasonable jury could find that the strip searches violated the Fourth Amendment; (7) defendant Fairall is entitled to absolute immunity; and (8) the Commonwealth defendants are entitled to qualified immunity. (Defs.' Br. 4-32; Defs.' Reply Br. 1-26.) For the reasons that follow, defendants' summary judgment motion is granted in part and denied in part.

1. **SUMMARY JUDGMENT LEGAL STANDARD**

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Unless evidence in the record would permit a jury to return a verdict for the nonmoving party, there are no issues for trial, and summary judgment becomes appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

An issue is "genuine" only if there is sufficient evidence with which a reasonable jury could find for the nonmoving party. Id. at 249. Furthermore, a factual dispute is only "material" if it might affect the outcome of the case. Anderson, 477 U.S. at 248.

The movant bears the burden of demonstrating that the evidence presented is insufficient

to support the claims and therefore a reasonable jury would be unable to reach a verdict for the plaintiff. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

If this initial burden is met, then the nonmoving party bears the burden of demonstrating that there are disputes of material fact that should proceed to trial. Matsushita Elec., 475 U.S. at 586. "There must be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Monroe v. Beard, 536 F.3d 198, 207 (3d Cir. 2008) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)), cert. denied, 129 U.S. 1647 (2009); see Celotex Corp., 477 U.S. at 322 (If the nonmoving party does not carry this burden, then summary judgment should be granted.).

**2. DISCUSSION**

**(A) PERSONAL INVOLVEMENT IN CONSTITUTIONAL WRONGDOING**

Section 1983 does not immunize state officials who are sued in their individual capacity. Monroe v. Beard, 2007 WL 2359833, *21 (E.D. Pa. Aug. 16, 2007), aff'd, 536 F.3d 198 (3d Cir. 2008), cert. denied, 129 U.S. 1647. Nevertheless, for liability to attach, there must be an element of personal involvement on the part of the defendant through particular participation, knowledge, or acquiescence. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Monroe, 2007 WL 2359833, at *21. Defendants' motion alleges that plaintiff's § 1983 claims against defendants

3

Beard, Dohman, Fairall, Shaffer, and Vaughn fail for lack of personal involvement in any constitutional wrongdoing.² (Defs.' Br. 4 (citing Rode, 845 F.2d at 1207).)

Plaintiff responds that the summary judgment motion should be denied with respect to defendant Beard, "because as [a] state actor[], [he] can and should be held liable for approving a policy **whose implementation** amounted to deliberate indifference to an inmate's constitutional rights." (Pl.'s Letter Br. 2/1710, at 3 (emphasis added).) Plaintiff does not provide evidence that defendant Beard violated the Constitution by approving the policy, see, e.g., Monroe, 536 F.3d at 209, or that Mr. Beard, in particular, was personally involved in applying the policy in a manner that violated plaintiff's constitutional rights. Furthermore, "a section 1983 action cannot be based solely upon a theory of respondeat superior." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, defendants' motion is granted with regard to defendant Beard for lack of personal involvement required in a § 1983 action. See, e.g., Rambert v. Beard, 2010 WL 936293, *7 (M.D. Pa. Mar. 15, 2010) (dismissing defendant Beard from a § 1983 action in that the plaintiff "[did] not allege that Beard violated the Constitution by enacting [a policy], or that Beard was personally involved in applying the policy in a manner that violated [the] plaintiff's constitutional rights").

With regard to defendant Shaffer, plaintiff contends:

> Defendant Shaffer was included on the August 10, 2005 memorandum distributed by Defendant Lorenzo, referred to in this case as the 'Lorenzo Memorandum,' along with approximately forty inmates, including Mr. Griffin-El, who had items seized from them during the August 4, 2005 UCC search. Accordingly, Defendant Shaffer was personally aware that documents had been seized from

---

²As explained, plaintiff's counsel has since confirmed the withdrawal of claims against defendant Vaughn, (Oral Arg. 2/16/10, at 2-6), and those claims are dismissed. See supra note 1.

> [plaintiff], as well as the procedure that was **supposed** to be followed
> with regard to the return of any items that were seized improperly.

(Pl.'s Letter Br. 2/17/10, at 3 (citations to record omitted).) However, although plaintiff argues that Shaffer was aware that documents had been seized from plaintiff as well as numerous other prisoners and that he was aware of the procedure that was supposed to be followed, as with defendant Beard, plaintiff fails to point to evidence indicating that defendant Shaffer was personally involved in applying the policy in a manner that violated plaintiff's constitutional rights. Accordingly, defendants' motion is granted with respect to Mr. Shaffer due to lack of the required personal involvement under § 1983.

With respect to defendant Dohman, plaintiff has pointed to evidence that, among other things, defendant DiGuglielmo had conversations specifically about the items seized from plaintiff and the nature of those items and that DiGuglielmo believed that Dohman personally reviewed the materials seized from plaintiff. (See, e.g., DiGuglielmo Dep. 7/10/09, at 110, 145-46, 170.) Considering the evidence in the light most favorable to plaintiff, see Matsushita Elec., 475 U.S. at 587, plaintiff has pointed to evidence which indicates that Dohman had actual knowledge of the materials seized from plaintiff and not returned and that he either acquiesced or participated in failing to return them. See Harcum v. Shaffer, 2007 WL 4167161, *10 (E.D. Pa. Nov. 21, 2007) (where plaintiff submitted "supporting documentation" that defendant had actual knowledge that plaintiff's materials had not been returned and either acquiesced or participated in failing to return them). Accordingly, defendants' motion is denied with respect to claims against defendant Dohman.

On the other hand, plaintiff has failed to point to evidence showing that defendant Fairall

5

was personally involved with the alleged misconduct. Plaintiff argues that defendant Moyer "provided Fairall with information on specific inmates believed to be involved in the UCC Redemption process, and the materials that [he] found," and that Department of Corrections ("DOC") employees are required to provide Fairall with the "name[s] and supporting materials" of inmates involved in "the UCC Redemption process." (Pl.'s Letter Br. dated Feb. 17, 2010, at 2.) However, plaintiff has failed to point to any evidence that Fairall specifically participated in or had knowledge and acquiescence in the alleged misconduct with regard to plaintiff. Since plaintiff has failed to satisfy the personal involvement requirement for § 1983 claims, defendant's motion is granted with respect to defendant Fairall.[3]

### (B) Plaintiff's Claim for Declaratory Relief

Defendant further argues that plaintiff's claim for declaratory relief is inappropriate and unavailable under the Declaratory Judgment Act. The purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." Travelers Ins. Co. v. Davis, 490 F.2d 536, 543 (3d Cir. 1974); see Algrant v. Evergreen Valley Nurseries Ltd., 126 F.3d 178, 189 (3d Cir. 1997) (citing Travelers) (Mansmann, Cir. J., dissenting). Thus, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct." Corliss v. O'Brien, 2006 WL 2686644, *3 (3d Cir. 2006). "Nor is

---

[3] In that defendant Fairall was lacking the personal involvement required for a § 1983 claim to be brought against him, it is unnecessary to address the issue of Fairall's absolute immunity as Deputy Chief Counsel for Pennsylvania's Department of Corrections ("DOC"), (Defs.' Br. 25).

declaratory judgment meant simply to proclaim that one party is liable to another." Id.

In this case, Count I of Plaintiff's Second Amended Complaint specifically "requests declaratory judgment that Defendants **have** violated [plaintiff's] constitutional rights, which **has** resulted in extreme and irreparable prejudice to his underlying criminal conviction and appeals thereof." (Pl.'s Second Am. Compl. ¶ 83 (emphasis added).) Thus, although plaintiff's brief in opposition to defendants' motion asserts that plaintiff's claims involve continuing conduct," (Pl.'s Br. 32), the request for declaratory judgment as stated in Plaintiff's Second Amended Complaint specifically seeks a formal declaration regarding an adjudication of past conduct.[4] (Id.) In that "[d]eclaratory judgment is inappropriate" for such a purpose, defendant's summary judgment motion is granted with regard to plaintiff's claim for declaratory judgment.[5] See Corliss, 2006 WL 2686644, at *3; see also Algrant, 126 F.3d at 189; Travelers Ins., 490 F.2d at 543.

### (C) Plaintiff's First Amendment Access-to-Courts Claims

Defendants argue that plaintiff cannot show an "actual injury" from the alleged confiscation of his legal materials. (Defs.' Br. 7.) Alternatively, they contend that the rule of Heck v. Humphrey, 512 U.S. 477 (1994), bars plaintiff's access-to-courts claim. (Id.)

---

[4]Furthermore, declaratory judgment is not meant "simply to proclaim that one party is liable to another." Corliss, 2006 WL 2686644, at *3.

[5]It is noted that plaintiff's request for declaratory judgment in his Second Amended Complaint specifically seeks a formal declaration regarding past conduct **as it relates to "his underlying criminal conviction and appeals thereof,"** (Pl.'s Second Am. Compl. ¶ 83 (emphasis added)). Thus, the request for declaratory relief relates specifically to past conduct with regard to plaintiff's First Amendment access-to-courts claim which, as explained infra, fails to survive defendants' summary judgment motion.

7

Plaintiff's Second Amended Complaint alleges that due to the "unlawful seizure and retention of [his] legal materials, he was unable to exercise his right to defend himself in his PCRA action." (Pl.'s Second Am. Compl. ¶ 85.) Plaintiff asserts that "[w]ithout an opportunity to provide a coherent and analyzed statement of his position on the relevant issues, [his] claims and appeals were dismissed by the Court of Common Pleas and the Pennsylvania Superior Court." (Id.)

A prisoner's First Amendment rights include a right of access to courts. Lewis v. Casey, 518 U.S. 343, 349-56 (1996); Bounds v. Smith, 430 U.S. 817 (1977); Abdul-Akbar v. Watson, 4 F.3d 195, 202-03 (3d Cir. 1993); Conway v. Lindsay, 2009 WL 1956282, *3 (M.D. Pa. July 6, 2009). "It is well established that a prisoner bringing a denial of access claim under section 1983 must demonstrate that the defendant caused him 'actual injury' by depriving him of **an opportunity to pursue a non-frivolous claim**." Jones v. Domalakes, 312 Fed. Appx. 438, 440 (3d Cir. 2008) (citing Christopher v. Harbury, 536 U.S. 403, 415-18 (2002); Lewis, 518 U.S. at 348-55) (emphasis added). A plaintiff alleging the denial of access to the courts must show "'actual injury' . . . **as a result of the purported unlawful acts** in order to proceed with his suit." Conway, 2009 WL 1956282, at *6 (citing Lewis, 518 U.S. at 349-57) (emphasis added).

In this case, plaintiff filed his Pennsylvania Post Conviction Relief Act (PCRA) petition on June 28, 2002. More than three years later, on August 4, 2005, his cell was searched and certain documents were seized pursuant to the policy implemented by the DOC to search and confiscate materials related to the Uniform Commercial Code (UCC).[6] See Monroe, 536 F.3d at

---

[6]This policy has been upheld as constitutional in Monroe, 536 F.3d at 207. Indeed, at oral argument, plaintiff's counsel acknowledged the legitimacy of the Aug. 4, 2005 search. (Oral Arg. 2/16/10, at 38 ("We have a body of documents that were seized. Granted, no question about

202. Two months later, on October 6, 2005, the PCRA Court issued a Notice of Intent to Dismiss the PCRA petition. Although plaintiff filed a request for an extension of time to file a reply to the Court's Notice of Intent, on November 28, 2005, the Court of Common Pleas denied and dismissed the PCRA petition.[7]

Despite defendants' conduct as alleged by plaintiff, however, plaintiff was able to pursue his PCRA claims by filing a Notice of Appeal to the Superior Court of Pennsylvania on December 29, 2005. On September 13, 2006, plaintiff filed a request for an extension of time to file an appellate brief in support of his appeal, asserting, among other things, that legal documents were seized from his cell at SCI-Graterford. The Superior Court **granted** plaintiff's request for an extension of time, providing until October 18, 2006 to file a brief. Significantly, the Superior Court's Order granting the extended deadline clarified: "**Appellant may raise the lack of a complete record** - along with all other issues that appellant desires to raise on appeal - **as an issue in appellant's brief.**" Despite the Superior Court's Order, plaintiff failed to file a brief, and on November 20, 2006, the Superior Court dismissed his appeal **due to his failure to file a brief**. Plaintiff fails to point to evidence that, "**as a result of the purported unlawful acts,**" he was prevented from pursuing his PCRA claims by filing a timely brief. See Conway, 2009 WL 1956282, at *3 (citing Lewis, 518 U.S. at 349-57) (emphasis added). The record

---

it, was there a legitimate reason for the State, the prison officials to go in and seize these materials? Absolutely. Acknowledging, knowing going in that they may have taken more than the target documents whether they be UCC documents or other types of contraband, granted.").)

[7]It is noted that the challenged second search of plaintiff's cell, on May 5, 2006, occurred well after the Nov. 28, 2005 ruling of the PCRA Court. In any event, as explained infra, plaintiff was not prevented the opportunity to pursue his PCRA claims by appealing to Pennsylvania's Superior Court.

reflects that his opportunity to litigate his claims was lost **because plaintiff failed to file a brief**, which the Superior Court explicitly provided could have included any claims of lack of a complete record. See Jones, 312 Fed. Appx. at 440 (citing Christopher, 536 U.S. at 415-18; Lewis, 518 U.S. at 348-55) ("a prisoner bringing a denial of access claim under section 1983 must demonstrate that the defendant caused him 'actual injury' by **depriving him of an opportunity to pursue a non-frivolous claim**"); cf. Garland v. Horton, 129 Fed. Appx. 733, 736 (3d Cir. 2005) ("Any failure by [plaintiff] to file a timely PCRA petition cannot fairly be traced to his brief detention in the [restrictive housing unit] or a similarly brief lack of writing materials."). Accordingly, defendants' summary judgment motion is granted with regard to plaintiff's First Amendment access-to-courts claims.

### (D) Plaintiff's First Amendment Retaliation Claims

Defendants argue that as a matter of law, plaintiff cannot prevail on his retaliation claims. Count III of plaintiff's Second Amended Complaint provides:

> 89. Plaintiff endured: (1) embarrassing and demeaning strip searches in an alleged effort to locate paper; (2) seizure of legal materials that formed the basis of his defense to criminal allegations that have placed him in prison for life; (3) biased RHU hearings; (4) excessive solitary confinement and disciplinary custody; (5) loss of his prison job; (6) an increase in his custody level; (7) his ability to transfer to another prison closer to his family; and (8) other retaliatory actions.
> 90. Defendants' actions against [plaintiff] were retaliatory and as a result of [plaintiff's] attempts to exercise his First Amendment rights.

(Pl.'s Second Am. Compl. ¶¶ 89-90.)

To prevail on a retaliation claim, a prisoner must make a three-part showing. First, as a

threshold matter, the prisoner must "prove that the conduct which led to the alleged retaliation was constitutionally protected." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted); Kantamanto v. King, 651 F. Supp.2d 313, 324-25 (E.D. Pa. 2009) (citing Rauser). The prisoner must also "show that he suffered some 'adverse action' at the hands of the prison officials." Rauser, 241 F.3d at 333 (citation omitted); Kantamanto, 651 F. Supp.2d at 325. The prisoner satisfies this requirement by "demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Rauser, 241 F.3d at 333 (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)); Kantamanto, 651 F. Supp.2d at 325. Finally, the prisoner must demonstrate "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser, 241 F.3d at 333. A causal link is established when the "constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [the prisoner]." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (citing Rauser, 241 F.3d at 333); Kantamanto, 651 F. Supp.2d at 325.

Once the prisoner has made this prima facie case, the burden shifts to the defendant prison officials who "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334; Kantamanto, 651 F. Supp.2d at 325. "At the summary judgment stage, the plaintiff need only meet his burden of producing evidence from which a reasonable jury could conclude that the adverse action was taken in retaliation for the exercise of his protected rights." Id. (quoting Booth v. King, 346 F. Supp.2d 751, 762 (E.D. Pa. 2004)). To withstand summary judgment and submit the question of causation to a factfinder, the plaintiff must "produce[] evidence from which a reasonable jury could conclude that the exercise of his right was a

'substantial and motivating factor' in defendants' actions . . . ." Id. (quoting Booth, 346 F. Supp.2d at 762).

Initially, it is noted that defendants have conceded for purposes of their motion "that plaintiff's complaints and grievances regarding the confiscation of his UCC-related materials were protected activities under the First Amendment." (Defs.' Br. 12.) Furthermore, upon consideration of the evidence in the light most favorable to the nonmoving party, see Anderson, 477 U.S. at 248, defendants' summary judgment motion is denied with regard to plaintiff's First Amendment retaliation claims, in that there exist genuine issues of material fact. Plaintiff has produced evidence from which, when viewed in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff's exercise of his right to submit complaints and grievances was a substantial and motivating factor in adverse actions taken by defendants against plaintiff. (See, e.g., Pl.'s Br. 21-30.)

### (E) PLAINTIFF'S FOURTEENTH AMENDMENT DUE PROCESS CLAIMS

In Count IV of his Complaint, plaintiff alleges a violation of his Fourteenth Amendment due process rights. (Pl.'s Second Am. Compl. ¶¶ 92-100.) In particular, he alleges that the State Correctional Institution in Graterford, Pennsylvania ("SCI-Graterford") "has a policy for prisoners to request a review of and return of materials seized from their prison cells, which [plaintiff] followed" and that "Defendants denied [him] these rights repeatedly by ignoring his requests and in keeping his legal materials." (Id. ¶ 94-95.) His Complaint further alleges that "SCI-Graterford has a policy and/or practice that provides for full and fair hearings regarding disciplinary proceedings" and that "Defendants denied [him] these rights by denying him a full

and fair hearing or appeal of the discipline he received and by misrepresenting the true nature of the events during the proceedings." (Id. ¶ 96-97.) Finally, plaintiff alleges that his "disciplinary sentencing was excessive and discriminatory because of his protected activity." (Id. ¶ 98.) At oral argument, plaintiff's counsel confirmed that plaintiff is "not challenging [the August 4, 2005] seizing of the documents," and he acknowledged that the prison officials "had a legitimate reason to do that." (Tr. Oral Arg. 2/16/10, at 39.)

"'[A]n unauthorized intentional deprivation of property' by prison officials does not violate the Due Process Clause 'if a meaningful postdeprivation remedy for the loss is available.'" Monroe, 536 F.3d at 210 (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)); see Dantzler v. Beard, 2010 WL 1008294, *9 (W.D. Pa. Mar. 15, 2010). "The federal Courts in Pennsylvania repeatedly have held that the DOC's grievance procedure is an adequate post-deprivation remedy for purposes of protecting due process rights." Woods v. Abrams, 2007 WL 2852525, *19 (W.D. Pa. Sep. 27, 2007); see Dantzler, 2010 WL 1008294, at *10 (The DOC grievance system "has been held to afford adequate post-deprivation process."). In particular, plaintiff "had available to him, as a matter of law, the grievance process which allowed for his complaint[s] to be heard and responded to and if he were dissatisfied with the response, the process provided him, not one, but two opportunities to appeal, i.e., two more additional opportunities to be heard." See, e.g., Clentscale v. Beard, 2008 WL 3539664, *5 (W.D. Pa. Aug. 13, 2008); Woods, 2007 WL 2852525, at *18 ("The DOC grievance system provides three levels of review"). "A plaintiff's failure to [properly] avail himself of such remedy does not affect its adequacy as a post-deprivation remedy." Id. at *19 (citing Ramos v. Vaughn, 1995 WL 386573, *3 (E.D. Pa. June 27, 1995), aff'd, 85 F.3d 612 (3d Cir. 1996)). Furthermore, "[t]he fact that the

13

prisoner was not successful in his grievance pursuit does not undermine the procedure's adequacy as a post-deprivation remedy." Id. at *19 (citing e.g., Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995)).  Since an adequate post-deprivation remedy was available to plaintiff, namely the DOC's grievance procedure, defendants' motion is granted with regard to plaintiff's Fourteenth Amendment due process claims.  See id. at *19.

### (F) Plaintiff's Fourth Amendment Strip Searches Claims

In Count V of his Second Amended Complaint, plaintiff alleges that defendants violated his Fourth Amendment rights since he was "subjected to two grossly embarrassing and intrusive strip searches under the guise of false pretenses, i.e., search for UCC-related materials." (Pl.'s Second Am. Compl. ¶ 102, 104.)  "Inmates do not have a Fourth Amendment right to be free of strip searches, which can be conducted by officials without probable cause provided that the search is conducted in a reasonable manner."  Collins v. Derose, 2009 WL 812008, *5 (M.D. Pa. Mar. 26, 2009) (citing Bell v. Wolfish, 441 U.S. 520 (1979)); see Ostrander v. Horn, 145 F. Supp.2d 614, 620 (M.D. Pa. 2001), aff'd, 49 Fed. Appx. 391 (3d Cir. 2002) (table); Wilson v. Shannon, 982 F. Supp. 337, 339 (E.D. Pa. 1997).  Courts have found routine strip searches reasonable.  Collins, 2009 WL 812008, at *5; see Goff v. Nix, 803 F.2d 358, 370-71 (8th Cir. 1986), cert. denied, 484 U.S. 835 (1987); Campbell v. Miller, 787 F.2d 217, 228 (7th Cir.), cert. denied, 479 U.S. 1019 (1986); Arruda v. Fair, 710 F.2d 886 (1st Cir.), cert. denied, 464 U.S. 999 (1983).  Indeed, strip searches performed during the August 4, 2005 cell searches for UCC-related material have been found not to have violated the Fourth Amendment.  See Monroe v. Beard, 2007 WL 764086, *8 (E.D. Pa. Mar. 7, 2007), aff'd, 536 F.3d 198 (3d Cir. 2008), cert.

14

denied, 129 S. Ct. 1647 (2009). Here, plaintiff has failed to provide evidence of unreasonable strip searches during either of the cell searches. Accordingly, defendants' motion is granted with respect to plaintiff's Fourth Amendment claims. See, e.g., id. (dismissing plaintiffs' Fourth Amendment claims challenging the strip searches during the August 4, 2005 cell searches for UCC-related material); Collins, 2009 WL 812008, at *5 (finding that routine strip searches did not rise to the level of a constitutional violation under the Fourth Amendment); Wilson, 982 F. Supp. at 340 (granting the defendants' summary judgment motion on Fourth Amendment claim alleging that repeated strip searches in the law library and as a result of security check of prisoner's cell caused emotional distress and headaches, as well as mental anguish); see also Monroe, 2007 WL 764086, at *8 (quoting Hudson v. Palmer, 468 U.S. 517 (1984)) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.").

### (G)  QUALIFIED IMMUNITY FROM PLAINTIFF'S RETALIATION CLAIMS

The doctrine of qualified immunity provides that government officials, including prison officials, are immune from suits for civil damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Montanez v. Thompson, - - F.3d - - , 2010 WL 1610612, *4 (3d Cir. Apr. 22, 2010) (quoting Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)). Determining whether the defendants are entitled to qualified immunity requires two inquiries, which can be taken in either order. Pearson, 129 S. Ct. at 818; Montanez, 2010 WL 1610612, at *4-5. The first is "whether the facts

15

that a plaintiff has alleged or shown make out a violation of a constitutional right; the second is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 816 (internal citations omitted); Montanez, 2010 WL 1610612, at *4.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Montanez, 2010 WL 1610612, at *6 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Thus, because this inquiry focuses on the official's actual situation, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. (quoting Saucier, 533 U.S. at 201). The second prong of the qualified immunity analysis therefore turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Id. (quoting Pearson, 129 S. Ct. at 822); see Pearson, 129 S. Ct. at 822 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)).

Here, as explained, taking the facts in the light most favorable to plaintiff, at this stage of the proceedings plaintiff has provided sufficient evidence of a constitutional violation of his right to submit complaints and grievances without suffering retaliation. See, e.g., Booth v. King, 346 F. Supp.2d 751, 764 (E.D. Pa. 2004). Furthermore, it would be clear to a reasonable prison official at the relevant time in the specific context of this case that plaintiff had a right to be free from retaliation for exercising his right to file grievances, see Montanez, 2010 WL 1610612, at *6 (citing Saucier, 533 U.S. at 201). See, e.g., Booth, 346 F. Supp.2d at 764 (denying defendants' summary judgment motion on plaintiff's First Amendment retaliation claim and finding that defendants were not entitled to qualified immunity in that the plaintiff's right to file

16

grievances without suffering retaliation was clearly established); Cooper v. Beard, 2006 WL 3208783, *15 (E.D. Pa. Nov. 2, 2006) (citing Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003) ("the Third Circuit has clearly established a prisoner's right to access the courts and right to petition the government for redress of grievances such that a reasonable prison official would know that he violates these rights if he retaliates against a prisoner for filing a lawsuit or filing grievances"); Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981) ("The right of access to the courts must be 'adequate, effective and meaningful,' . . . and must be freely exercisable without hindrance or fear of retaliations.) (internal citations omitted). To the extent that defendants argue that they had legitimate, non-retaliatory reasons for their actions, "[their] argument is more properly viewed as a challenge to the factual issues of motivation and rebuttal." See Reilly v. Atlantic City, 532 F.3d 216, 232-33 (3d Cir. 2008), cert. denied, 129 S. Ct. 1316 (2009); see also Monteiro v. City of Elizabeth, 436 F.3d 397, 404-05 (3d Cir. 2006) (whether "conduct violated clearly established law depended upon [defendant's] motivation" for alleged retaliation and there was sufficient evidence of motive to go to a jury), cert. denied, 549 U.S. 820 (2006). Accordingly, defendants' summary judgment motion is denied with respect to plaintiff's First Amendment retaliation claims.

An implementing Order follows.