**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **K. KABASHA GRIFFIN-EL** | : | **CIVIL ACTION** |
| **a/k/a KEITH FEDELE GRIFFIN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY A. BEARD, et al.,** | : | |
| **Defendants.** | : | **NO.  06-2719** |

**MEMORANDUM AND ORDER**

**L. FELIPE RESTREPO**                                                      **JANUARY 22, 2013**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff K. Kabasha Griffin-El, a state inmate, filed this Section 1983 suit against

numerous officials and employees of the Pennsylvania Department of Corrections ("DOC"),

alleging the violation of his constitutional rights arising from the search of his cell and

confiscation of his property that followed the enactment of a DOC policy prohibiting inmate

possession of certain materials related to the Uniform Commercial Code ("UCC").  See Griffin-

El v. Beard, 411 Fed. Appx. 517, 518 (3d Cir. 2011).  Defendants moved for summary judgment

on the basis of, among other things, qualified immunity.  By Memorandum and Order filed April

30, 2010, I granted defendants' motions on all claims except a First Amendment claim that

alleged that defendants had retaliated against Griffin-El for making complaints and filing

grievances related to the search and seizure.  The defendants appealed from this ruling, and on

February 3, 2011, the Third Circuit "vacat[ed] the portion of the order denying [defendants']

motion for summary judgment on [plaintiff's] First Amendment retaliation claims," see Griffin-

El, 411 Fed. Appx. at 520, in light of the requirement that "qualified immunity be assessed in the

context of each individual defendant's specific conduct," see Griffin-El, 411 Fed. Appx. at 519-20.  See Forbes v. Twp. of Lower Merion, 313 F.3d 144, 149 (3d Cir. 2002); Grant v. City of Pittsburgh, 98 F.3d 116, 123 (3d Cir. 1999).  In compliance with our Court of Appeals' ruling and for the reasons that follow, defendant John W. Moyer's motion on the issues relevant here is denied, while the other remaining defendants' motions are granted.

## I.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).  Unless evidence in the record would permit a jury to return a verdict for the nonmoving party, there are no issues for trial, and summary judgment becomes appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

An issue is "genuine" only if there is sufficient evidence with which a reasonable jury could find for the nonmoving party.  Anderson, 477 U.S. at 249.  Furthermore, a factual dispute is only "material" if it might affect the outcome of the case.  Id. at 248.

The movant bears the burden of demonstrating that the evidence presented is insufficient to support the claims and therefore a reasonable jury would be unable to reach a verdict for the plaintiff.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial burden can be met simply by

"pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

If this initial burden is met, then the nonmoving party bears the burden of demonstrating that there are disputes of material fact that should proceed to trial.  Matsushita Elec., 475 U.S. at 586.  "There must be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted."  Monroe v. Beard, 536 F.3d 198, 207 (3d Cir. 2008) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)), cert. denied, 129 U.S. 1647 (2009); see Celotex Corp., 477 U.S. at 322 (If the nonmoving party does not carry this burden, then summary judgment should be granted.).

### B.  Qualified Immunity

Qualified immunity insulates from civil liability government officials, including prison officials, performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)).  Therefore, government officials' discretionary acts are immune from civil liability insofar as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Forbes, 313 F.3d at 148 (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)).

Determining whether the defendants are entitled to qualified immunity requires two inquiries, which can be taken in either order.  Pearson, 129 S. Ct. at 818; Montanez, 603 F.3d at

250. The first is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; the second is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 816 (internal citations omitted); Montanez, 2010 WL 1610612, at *4.

With regard to the first inquiry, in this case plaintiff alleges unlawful retaliation for exercising his First Amendment rights. To succeed on a First Amendment retaliation claim,

> an inmate plaintiff must prove that: (1) "the conduct which led to the alleged retaliation was constitutionally protected," Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); (2) the inmate "suffered some adverse action at the hands of the prison officials," which requires demonstration that the adverse action "was sufficient to deter a person of ordinary firmness from exercising his constitutional rights," id. (quotation marks omitted); and (3) there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Id.

Mincy v. Klem, 277 Fed. Appx. 239, 243 (3d Cir. 2008).

Here, the moving defendants do not contest, for purposes of their motion, that "plaintiff's correspondences to DiGuglielmo dated August 9, 2005 and January 9, 2006; the grievance he filed on May 14, 2006; the grievance he filed on June 15, 2006; the grievance he filed on June 7, 2006; and the filing of the complaint in this action on August 1, 2006, were protected activities under the First Amendment." See Def.'s Br. (Doc. 192) 6. Defendants also do not contest, for purposes of their motion, that "plaintiff was strip[-]searched; his cell was searched; certain documents were seized during the searches of his cell; he had one disciplinary hearing; he was placed in disciplinary custody for ninety days; loss of his prison job and his custody level was increased from a three to a four." Id. What defendants do dispute is the causation element – that any of these events occurred because plaintiff engaged in activity protected by the First

Amendment.  Id.

The causation element of a First Amendment retaliation claim consists of a burden-shifting framework.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citing Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)); Brooks v. Smith, 2007 WL 3275266, *9 (E.D. Pa. Nov. 6, 2007).  To show a causal link, the prisoner plaintiff bears "the initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333 (quoting Mount Health, 429 U.S. at 187); see Mincy, 277 Fed. Appx. at 243 (citing Rauser); Brooks, 2007 WL 3275266, at *9.  To show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007); see Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link).

Our Court of Appeals has also acknowledged that prison administration is an unenviable task, and that decisions of prison officials should be afforded deference.  Brooks, 2007 WL 3275266, at *9 (citing Rauser, 241 F.3d at 334).  Therefore, if the prisoner proves that his constitutionally protected conduct was a substantial or motivating factor for the adverse action, "the defendants may prevail if they prove by a preponderance of the evidence 'that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'"  Id. (citing Rauser, 241 F.3d at 334); see Mincy, 277 Fed. Appx.

5

at 243 (citing <u>Rauser</u>).  "In establishing the elements of a retaliation claim, a plaintiff must come forward with more than 'general attacks' upon the defendant's motivations and must produce 'affirmative evidence' of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive."  <u>Nifas v. Coleman</u>, 2012 WL 707063, *6 (W.D. Pa. Feb. 9, 2012) (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600 (1998) (internal citations omitted)), <u>adopted</u>, 2012 WL 707035 (W.D. Pa. Mar. 5, 2012).

With regard to the second test applicable in addressing the qualified immunity issue, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Montanez</u>, 2010 WL 1610612, at *6 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  Thus, because this inquiry focuses on the official's actual situation, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."  <u>Id.</u> (quoting <u>Saucier</u>, 533 U.S. at 201).  The second prong of the qualified immunity analysis therefore turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  <u>Id.</u> (quoting <u>Pearson</u>, 129 S. Ct. at 822); <u>see</u> <u>Pearson</u>, 129 S. Ct. at 822 (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999)).

Consistent with the instruction that qualified immunity be assessed in the context of each individual defendant's specific conduct, our Court of Appeals requires "an analysis of the facts adduced concerning the conduct of the official who claims immunity."  <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111(3d Cir. 1990).  Thus, here, we must "analyze separately the conduct of each . . . Defendant against the constitutional right allegedly violated," <u>see</u> <u>Griffin-El</u>, 411 Fed. Appx. at 519 (citing <u>Grant</u>, 98 F.3d at 123); <u>see also</u> <u>Rouse</u>, 182 F.3d at 200-01, and "specify those

6

material facts that are and are not subject to genuine dispute and explain their materiality," Forbes, 313 F.3d at 146.  "[E]ach state actor is entitled to have the defense of qualified immunity considered in the context of his or her specific conduct in determining whether there is indeed a genuine dispute of fact material to the question of whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Griffin-El, 411 Fed. Appx. at 521 n.2.  In that regard, the Court must address plaintiff's claims as to each of the moving defendants, mindful of the necessity "to specify, in compliance with Forbes, which material facts, if any, preclude qualified immunity as to each" moving defendant.  Id.

"When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity."  Ober v. Miller, 2007 WL 4443256, *8 (M.D. Pa. Dec. 18, 2007) (citing Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp.2d 821, 838-41 (E.D. Pa. 2000)); Barshinger v. Buffington, 2004 WL 3607974, *6 (M.D. Pa. June 10, 2004); see also Monteiro v. City of Elizabeth, 436 F.3d 397, 404-05 (3d Cir. 2006) (whether "conduct violated clearly established law depended upon [the defendant's] motivation" for alleged retaliation); Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").  Therefore, the Court of Appeals "vacat[ed] the portion of the order denying [defendants'] motion for summary judgment on [plaintiff's] First Amendment retaliation claims," see Griffin-El, 411 Fed. Appx. at 520, in light of the requirement that "qualified

7

immunity be assessed in the context of each individual defendant's specific conduct," id. at 519-20.  See Forbes, 313 F.3d at 149; Grant, 98 F.3d at 123.  Proceeding under this framework, and upon consideration of the evidence in this case specific to each of the moving defendants, defendants' renewed motion for summary judgment is granted in part and denied in part.

## II.  DISCUSSION

### A.  Mary Canino

On May 11, 2006, DOC Hearing Examiner, Mary Canino, conducted plaintiff's disciplinary hearing (JA 1905 ¶ 37)[1] for possession of contraband which included UCC-related materials and a floppy disc.  Plaintiff alleges that Canino "acted with retaliatory intent" in her role as hearing examiner.  See Pl.'s Br. 28.

At the hearing, plaintiff admitted that the documents seized from his cell on May 5, 2006 were his.  (JA 93.)  He further admitted that he possessed a floppy disk outside of the prison school building and that he understood that a floppy disk outside of the prison school building was considered contraband.  (JA 143.)  Although Canino could have sanctioned plaintiff to 90 days disciplinary custody for each of the three misconduct charges, because she viewed plaintiff's aforementioned admissions as a plea of guilty, she sanctioned him to 90 days disciplinary custody, revocation of contraband, and loss of job.  (JA 93, 990, 996, 998, 999, 1938 ¶ 48.)  The loss of job was due to the fact that an inmate's job may not be held open for 90 days.  (JA 998, 999.)  As a result of plaintiff's misconduct, plaintiff's custody level was automatically

---

[1]The evidence referred to by the parties has been consolidated in a Joint Appendix herein cited as "JA" and a Supplemental Appendix cited herein as "SA."

increased from Level 3 to Level 4, via the PACT computer program utilized at the prison.  (JA 1777.)

As explained, plaintiff bears "the initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333 (quoting Mount Health, 429 U.S. at 187); see Mincy, 277 Fed. Appx. at 243 (citing Rauser); Brooks, 2007 WL 3275266, at *9.  Here, as defendants point out, see Defs.' Br. 8, plaintiff has failed to point to evidence that Canino was even aware of plaintiff's complaints or grievances prior to the misconduct hearing.  Indeed, the evidence indicates that there is no overlap between a misconduct procedure and a grievance procedure, and Canino was neither involved with the grievance process, nor did she know who was responsible for that process.  (JA 1059-60.)  In any event, a defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity.  Laskaris v. Thornburgh, 733 F.2d 260, 265 (3d Cir. 1984); see Booth v. King, 228 Fed. Appx. 167, 172 (3d Cir. 2007) (prisoner must at least produce evidence showing that the alleged retaliation occurred after the defendants had knowledge of the prisoner's constitutionally protected activity); Jacobs v. Pa. DOC, 2009 WL 3055324, *9 (W.D. Pa. Sep. 21, 2009) (citing Booth).

Furthermore, it is undisputed that plaintiff possessed contraband under DOC policy (JA 143), and the evidence indicates "that [Canino] would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" See Mincy, 277 Fed. Appx. at 243 (citing Rauser, 241 F.3d at 334).  Having failed to point to evidence that Canino was aware of plaintiff's complaints or grievances prior to the misconduct hearing, and having admitted to possessing contraband, see e.g., Freeman v. Dep't of

9

Corrections, 447 Fed. Appx. 385 (3d Cir. 2011) (finding no genuine issue of material fact that prison guard's conduct was reasonably related to legitimate penological interests and that prisoner would have been disciplined for his offense notwithstanding his grievance where prisoner admitted to violating prison rules by possessing UCC materials), there is an absence of evidence to support plaintiff's claim of First Amendment retaliation by defendant Canino, see Catrett, 477 U.S. at 323, and plaintiff fails to demonstrate there are disputes of material fact which should proceed to trial on that claim, see id. at 325.  See, e.g., Burgos v. Canino, 358 Fed. Appx. 302, (3d Cir. 2009) (affirming grant of summary judgment in favor of defendant in that "there [was] no evidence that [defendant's] decisions relating to the proceeding or her ultimate decision that [the plaintiff] was guilty of misconduct were motivated by any animus for [the plaintiff].").  Thus, as to defendant Canino, plaintiff has failed to satisfy the first inquiry required in determining whether plaintiff can overcome the qualified immunity issue.  See Pearson, 129 S. Ct. at 816; Montanez, 2010 WL 1610612, at *4.


### B.   Gerald Galinski

Plaintiff alleges that Inmate Program Manager Gerald Galinski acted with retaliatory intent when he ignored plaintiff's request for a reduction in sanction. Similar to plaintiff's claim against defendant Canino, plaintiff has failed to produce any evidence that Galinski's decision to deny the request was motivated by any animus for plaintiff, or that he was even aware of plaintiff's complaints and grievances.  Moreover, to the contrary, defendants have asserted legitimate, non-retaliatory reasons for refusing to reduce plaintiff's 90-day disciplinary sanction, namely that the DOC considered an inmate's possession of UCC-related materials a serious

10

misconduct.  Because plaintiff has not raised a genuine issue of material fact relating to the

reason for the refusal to reduce the disciplinary sanction, his retaliation claim against Galinski

fails.


### C.  David DiGuglielmo

Plaintiff claims that despite the fact that he complained to Superintendent David

DiGuglielmo several times both verbally and in writing that non-UCC materials were improperly

taken from his cell and were never returned, DiGuglielmo ignored and failed to properly respond

to plaintiff's complaints regarding the property taken from his cell and how he was treated

following the UCC search.  See Pl.'s Br. 14-18.  In particular, plaintiff alleges that "[a]fter the

August 4, 2005 search and seizure, [he] repeatedly complained to Superintendent DiGuglielmo

(and other prison officials) about the seizure and repeatedly requested the return of his legal

materials."  See Pl.'s Br. (Doc. 196) at 14.

In 2005, DiGuglielmo had a discussion with Captain Thomas Dohman, and Dohman

advised that plaintiff was suspected of having participated in "possibly a criminal activity" which

involved conducting a business using UCC materials.  (JA 260-61.)  Specifically, Dohman

indicated to DiGuglielmo that material had been confiscated from plaintiff's "assignment in the

[prison] school," which indicated that plaintiff was involved in an unauthorized business.  (JA

261.)

Plaintiff points to evidence that he "submitt[ed] a written complaint to Superintendent

DiGuglielmo on August 9, 2005, just five days after the initial search and seizure," id. at 15

(citing Pl.'s Statement of Additional Facts ("Pl.'s SOF") (attached to Pl's Br. as Ex. A) ¶ 44 ).

11

(JA 37-38, 173-76, 343-46.)  DiGuglielmo forwarded plaintiff's August 9, 2005 complaint to

defendant Michael Lorenzo, Deputy Superintendent of Internal Security, see Def.'s SOF ¶ 11.

(JA 43.)   Plaintiff followed-up with additional written complaints and verbal reminders to prison

officials, including Superintendent DiGuglielmo.  (JA 54-60, 77-78, 136-37, 360-61, 368-70,

1629-30.)

        In January 2006, plaintiff wrote to DiGuglielmo informing him that he was "litigating

[his] criminal case and . . . presently engaged in a very critical and crucial stage of the Post

Conviction Relief Act proceedings[;] it is paramount that my materials be returned as soon as

possible."  (JA 357-58, 531.)  Although DiGuglielmo did not provide a direct response to

plaintiff regarding plaintiff's January 9, 2006 letter (JA 357-58), DiGuglielmo had a 15-minute

conversation with Captain Dohman at which time DiGuglielmo requested that Dohman get this

situation "wrapped up," and Dohman indicated that he would do so.  (JA 358).  Dohman had

informed DiGuglielmo that items which appeared to be connected to efforts to run a business had

been confiscated from plaintiff's assignment in the school (JA 260-61) and that all these

materials were related to the UCC (JA 321).  Indeed, DiGuglielmo testified that Dohman led him

to believe on a number of occasions that none of the items which had not been returned to

plaintiff were unrelated to the UCC or the investigation.  (JA 360.)

        Sometime between January 2006 and March 9th of that year, DiGuglielmo also instructed

his secretary to contact Moyer to "[s]ee what property he still ha[d]," see Pl.'s SOF at 10 n.3.

(JA 534-36.)  In response to a March 2006 email making such a request (JA 765, 767), Moyer

responded that he "ha[d] not had a chance to go thru it," but that he would "go thru it and call

[plaintiff] down next week."  (JA 534-36.)

Plaintiff alleges that DiGuglielmo "simply ignored [his] requests for nine months, which vastly diminished [plaintiff's] ability to challenge his life sentence." See Pl.'s Br. 15. Plaintiff argues that "having heard no response for nearly nine months, on or about May 1, 2006, [plaintiff] saw Superintendent DiGuglielmo in the hallway and asked him 'once again if he would answer my request and provide me with my documents that I needed for court,'" see Pl.'s SOF ¶ 60. (JA 77-78, 136-37, 1629-30.)

By memorandum dated May 3, 2006, DiGuglielmo responded to plaintiff, with a copy sent to Moyer, advising plaintiff that he had discussed plaintiff's concerns with Moyer who indicated that he had property from plaintiff that was UCC-related and considered unauthorized. (JA 537.) DiGuglielmo further advised plaintiff that Moyer "may be taking further action with you and will follow up on your request," see Pl.'s SOF ¶ 67. (JA 537.)

Assuming for present purposes that DiGuglielmo took actions which can be considered adverse for purposes of a First Amendment retaliation claim, plaintiff fails to point to sufficient evidence to raise an inference of a causal link between the adverse actions and plaintiff's exercise of constitutional rights. See, e.g., Holbrook v. Walters, 2007 WL 1074475, *7 (M.D. Pa. Apr. 4, 2007) (granting defendants' summary judgment motion on prisoner's claim of First Amendment retaliation for, among other things, filing of prison grievances). In addition to there being no statements indicative of a retaliatory animus, there is no evidence of any agreement to aid in a retaliatory act, and no evidence of any antagonistic conduct on the part of DiGuglielmo directed at plaintiff. See id.

As pointed out by the Court in Holbrook, the fact that the Superintendent "failed to respond favorably to [plaintiff's] claims of retaliation expressed in his institutional grievances

and correspondence does not support an inference that their decisions were motivated by a retaliatory intent."  Id. at *8.  While plaintiff certainly points to evidence that DiGuglielmo was aware of plaintiff's complaints and might not have responded as aggressively or in a way which plaintiff would have preferred, and DiGuglielmo may have concurred in some of the adverse actions which plaintiff complains about, the record does not suggest that DiGuglielmo was motivated by an intent to punish plaintiff for exercising constitutional rights.  See Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to prison grievance did not establish that the officials and administrators were personally involved in underlying allegedly unconstitutional conduct); Holbrook, 2007 WL 1074475, at *8 (citing Brooks).  Accordingly, Defendant DiGuglielmo is entitled to summary judgment.


### D.  Corrections Officers Thomas Scarpati and Earl E. Thomas

Defendants argue that although plaintiff was strip-searched and his cell was searched on August 4, 2005 (JA 31-34), these events cannot form the basis of a First Amendment retaliation claim against Defendant Thomas Scarpati or Earl E. Thomas since these events preceded plaintiff's alleged activity protected by the First Amendment, see Def.'s Br. 6-7.  Indeed, our Court of Appeals observed that "Scarpati and Thomas are sued based solely on their search of [plaintiff's] cell and seizure of certain items, an event that occurred before any grievance was even filed by [plaintiff]."  See Griffin-El, 411 Fed. Appx. at 520.

Plaintiff responds that "[d]uring the August 4, 2005 search, [plaintiff] verbally complained to both COs Thomas and Scarpati that they were unlawfully seizing his legal

14

materials which were not contraband and unrelated to the UCC, and that [plaintiff] would have to file a complaint if they seized those materials." See Pl.'s Br. 13. Plaintiff further argues that "Thomas and Scarpati ignored this complaint and continued to seize [plaintiff's] non-contraband legal materials. . . . Thus, there are genuine issues of material fact as to their intent for continuing to seize non-contraband materials as well as their handling of the materials after they were seized, which preclude summary judgment as to their defense of qualified immunity." Id.

Plaintiff appears not to dispute that the search of plaintiff's cell by Thomas and Scarpati was performed, as our Court of Appeals pointed out, "before any grievance was even filed by [plaintiff]," see Griffin-El, 422 Fed. Appx. at 520. Although plaintiff testified at his deposition that he mentioned to Thomas and Scarpati that he "would have to file a complaint," his testimony indicates that Thomas and Scarpati had already begun searching for and seizing the items from plaintiff's cell prior to plaintiff even verbally mentioning that he would be filing a complaint. (JA 33.) Instead, plaintiff is arguing that Thomas and Scarpati retaliated against him by *continuing* to seize the alleged non-contraband after plaintiff *threatened* to file a grievance. See Pl.'s Br. 13. However, courts have held that the threat to file a prison grievance does not satisfy the first element of a retaliation claim. See Hunter v. Bledsoe, 2010 WL 3154953, *4 (M.D. Pa. Aug. 9, 2010); Stewart v. Varano, 2011 WL 3585409, *1 (M.D. Pa. Aug. 15, 2011) (threatening to file grievance not protected activity for First Amendment retaliation purposes); see also Hunter, 2010 WL 3154953, at n. 8 (finding no Third Circuit cases that hold mere threat to file prison grievance satisfies first of a retaliation claim); Stewart, 2011 WL 3585481 at *3 (citing Hunter). Moreover, there is no evidence that the officers' continuation of that search and seizure was in any way a retaliation due the exercise of plaintiff's First Amendment rights.

15

Since plaintiff is unable to point to sufficient evidence for a jury to return a verdict in plaintiff's favor, summary judgment should be granted on these claims.  See Monroe, 536 F.3d at 207 (quoting Armbruster, 32 F.3d at 777); see Celotex Corp., 477 U.S. at 322.

### E.  Sergeant Jason Dombrosky

Sergeant Jason Dombrosky, who at the time was a Corrections Officer, strip-searched plaintiff on May 5, 2006 and searched plaintiff's cell on that date.  (JA 83-84.)  Dombrosky had been instructed by Security Lieutenant John Moyer to search plaintiff's cell for any and all contraband including UCC materials and computer disks.  (JA 778.)  Plaintiff alleges that Dombrosky "removed a box from [his] cell full of business[-]related books, law books" that he alleges were not contraband.  (JA 84.)  In support of their motion, defendants argue that plaintiff has failed to point to evidence that Dombrosky was aware prior to the May 5, 2006 search of his person and search of his cell that plaintiff had engaged in activity protected by the First Amendment.  See Def.'s Br. 7.

Dombrosky also searched plaintiff's cell in May of 2007.  (JA 1390-91.)  On May 24, 2007, plaintiff submitted a grievance claiming that Dombrosky entered his cell on May 6, 2007 and that Dombrosky read plaintiff's legal materials and other personal documents and letters, and confiscated a letter.  (JA 1390-91.)  In support of their motion, defendants argue that plaintiff "has put forth no evidence other than the fact that plaintiff's cell was searched" and that he "does not even allege that he suffered any adverse actions because of the search."  See Def.'s Br. 7.

Plaintiff responds that "[d]uring that May 5, 2006 search and seizure ordered by Lt.

16

Moyer, CO Dombrosky seized materials that were not contraband and unrelated to the UCC, and took the unusual step of allowing Lt. Moyer to prepare the confiscation slips, even though Lt. Moyer was not present at the search." See Pl.'s Br. 26.  Plaintiff also argues that plaintiff "told CO Dombrosky at the time of the search that the items he was seizing were not contraband and that he had been given permission to purchase them.  Id.  However, since plaintiff fails to point to evidence that Dombrosky was even aware prior to the May 5, 2006 search that plaintiff had engaged in activity protected by the First Amendment, let alone that the constitutionally protected conduct was a substantial or motivating factor in the decision to conduct the May 2006 search and seizure, see Rauser, 241 F.3d at 333 (quoting Mount Health, 429 U.S. at 187), defendants' motion is granted with regard to plaintiff's claims related to the May 5, 2006 search.

Plaintiff further argues that Dombrosky "harass[ed] [plaintiff] even after this lawsuit was filed by subjecting [plaintiff] to another search and seizure; only this time, CO Dombrosky brought a drug searching dog to further harass [plaintiff], who [d]efendants have never claimed was suspected of possessing or using drugs." See Pl.'s Br. 26.  Plaintiff points out that the evidence indicates Dombrosky "knew of this lawsuit as early as August 7, 2006, when he received a litigation hold notice from his counsel," see id. at 26-27.  (SA 916.)

Although there is evidence that Dombrosky knew of this lawsuit in August 2006 (SA916), there is neither evidence of an unusually suggestive temporal proximity between the protected activity and the search of plaintiff's cell in May of 2007, nor evidence of a pattern of antagonism on the part of Dombrosky coupled with timing to establish a causal link.  See, e.g., Deflaminis, 480 F.3d at 267; Marasco, 318 F.3d at 512 (citing Krouse, 126 F.3d at 503).  Since plaintiff fails to provide sufficient evidence indicating that his constitutionally protected conduct

17

was "a substantial or motivating factor" in Dombrosky's decision to search his cell in May of 2007, plaintiff is unable to satisfy the causation element of his First Amendment retaliation claim against Dombrosky.

### F.   Michael A. Lorenzo

Plaintiff claims that Michael A. Lorenzo, Deputy Superintendent for Internal Security, "denied [plaintiff's] grievance related to the May 5, 2006 search and seizure without ensuring that the procedures that he developed in [his Memorandum] were followed," see Pl.'s Br. 31. (JA 1512-13, 1632-33.)  In particular, plaintiff complains that Lorenzo denied plaintiff's grievance "without anyone other than Lt. [John W.] Moyer allegedly reviewing the materials seized from [plaintiff],"[2] see Pl.'s SOF ¶¶ 156-57; see also Pl.'s Br. 31 (citing Pl.'s SOF ¶¶ 156-57).

Even accepting plaintiff's allegations as true, the mere fact that defendant Lorenzo did not follow the procedures he developed in denying plaintiff's grievance, absent something more, is insufficient to support a claim of retaliation.  Plaintiff does not provide any evidence to suggest that defendant Lorenzo was motivated by an intent to punish plaintiff for exercising his constitutional rights.  See Brooks, 167 Fed. Appx. at 925.  As such, defendant Lorenzo is entitled to summary judgment.

---

[2]On Aug. 10, 2005, Lorenzo distributed a memorandum ("Lorenzo Memorandum") to certain prison officials and 38 inmates, including plaintiff from whom items were seized during the UCC search and seizure.  (JA 177-79.)  The Lorenzo Memorandum informed the inmates of the reason for the search and seizure, that they were under investigation related to the UCC seizures, of available recourse, and that "any legal documents that were unwittingly confiscated and are not related to the UCC investigation will be returned to you."  (JA 177.)

### G.  Tomas Dohman

As to defendant Thomas Dohman, plaintiff admits that he had no face to face contact with Dohman and sued him because he is defendant Moyer's supervisor.  Because plaintiff has failed to provide any evidence that defendant Dohman was involved in the adverse decisions, and a state official cannot be held liable under Section 1983 on a theory of respondeat superior liability, defendant Dohman is entitled to summary judgment on plaintiff's First Amendment claim.  See Ward v. Taylor, 348 Fed. Appx. 766, 768-69 (3d Cir. 2009).

### H.  Wendy Shaylor

Defendant Wendy Shaylor rejected a grievance filed by plaintiff relating to the August 4, 2005 search and seizure as untimely pursuant to DOC policy and then subsequently accepted for filing a grievance relating to the May 5, 2006 search and seizure.  Plaintiff alleges that defendant Shaylor offered no explanation as to why she disregarded his explanation as to why he submitted a grievance nine months after the August 4, 2005 events, and that she has failed to explain why she re-used the same number from the untimely grievance.

"The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."  Burgos v. Canino, 641 F. Supp. 2d 443, 445 (E.D.Pa. 2009).  Moreover, plaintiff has failed to provide any evidence indicating that his constitutionally protected conduct was "a substantial or motivating factor" in Shaylor's decision to reject his grievance.  Rauser, 241 F.3d at 333.  As such, plaintiff is unable to satisfy his burden, and defendant Shaylor is entitled to summary judgment.

## I.   John W. Moyer

As to Defendant John W. Moyer, material facts exist that preclude immunity. Specifically, based on defendant Moyer's own testimony, the temporal proximity between the protected conduct and adverse action, the fact that defendant Moyer deviated from DOC policy, and credibility issues as to defendant Moyer's purported legitimate reason, I conclude that the evidence, viewed solely in the light most favorable to plaintiff, could support a jury finding that it was objectively unreasonable for defendant Moyer to order the May 5, 2006 search and to file misconduct charges against plaintiff, and I further conclude that the potential constitutional violation was clearly established at the time of the incident.  As such, defendant Moyer's motion for summary judgment is denied on the ground of qualified immunity.

First, plaintiff has produced sufficient evidence, which, if believed, would allow a reasonable juror to find that defendant Moyer met with plaintiff on May 5, 2006, ordered the second search, and charged plaintiff with misconduct because he engaged in the protected activity of complaining about the search of his legal materials.  Specifically, defendant Moyer, in his own testimony, admitted that he did not even bother to review any seized materials unless an inmate engaged in a protected activity such as filing a lawsuit or submitting an inmate request to complain about a seizure.  Plaintiff has also produced evidence that defendant Moyer took the unusual step of preparing confiscation slips to replace those prepared by the searching COs, even though he was not present at the search; that Defendant Moyer, contrary to procedures, was the only individual to review the materials seized; and that defendant Moyer did not discipline or even review floppy disks seized from another inmate that same day, while contending that plaintiff's inability to provide a password for a floppy disk was the basis for his ordering the

search and issuing the misconduct he received.  A reasonable juror could conclude that this evidence, coupled with the short two-day period between when defendant Diguglielmo asked defendant Moyer to address Griffin-El's requests for the return of his legal materials, after months of delay, and the May 5, 2006 interrogation suggests a retaliatory motive.

Second, that such actions offend the Constitution has been clearly established.  The right to be free from retaliation for exercise of First Amendment rights – including the filing of grievances – is clearly established.  Crawford-El v. Britton, 523 U.S. 574 (1998); Perry v. Sindermann, 408 U.S. 593, 597.  Moreover, in Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003), the Third Circuit held that falsely charging an inmate with misconduct in retaliation for filing complaints against prison officials implicated conduct protected by the First Amendment.  Id. at 530.  Defendant Moyer was on notice that his alleged actions – bringing misconduct charges against a prisoner in retaliation for filing a grievance – is conduct that violates plaintiff's First Amendment rights.

In sum, a reasonable juror could decide to believe plaintiff's version over that of defendant Moyer, and thus find that defendant Moyer's actions were objectively unreasonable. In other words, whether or not defendant Moyer's actions were objectively reasonable will turn on the credibility of witnesses' testimony.  Consequently, I will deny defendant Moyer's motion for summary judgment.

## III. CONCLUSION

For the reasons stated above, defendant Moyer's motion for summary judgment is denied. The other remaining defendants are entitled to qualified immunity, and hence their motions for

summary judgment are granted.  An implementing Order follows.